CASE 69—PETITION EQUITY—MAY 23, 1896.

## Trustees of Kentucky Female Orphan School v. City of Louisville.

## Same v. Bell, Sheriff.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. TAXATION—EXEMPTION OF EDUCATIONAL AND CHARITABLE INSTITU-. TIONS—CONSTITUTIONAL CONSTRUCTION.—A school, the primary object of which is the education of destitute orphan girls, or those who have some means, but not enough to support them in other schools, is an institution of "purely public charity" within the meaning of section 170 of the Kentucky Constitution, and therefore exempt from taxation under the provisions of that section. And the fact that by its charter "pay pupils may be admitted

into the institution," does not deprive it of its character as a "purely public charity," where the income derived from such pay pupils is devoted to the general and main purpose of educating and supporting those who are unable to provide for their own support and education.

2. SAME.—Such a school is also an "institution of education not used or employed for gain by any person or corporation and the income of which is devoted solely to the cause of education," within the meaning of that section.

3. SAME.—The exemption of the "institution" from taxation by that section—there being no qualifying words used showing or tending to show that only the property "used" by the institution or "connected" with the institution, was intended to be exempted—means the corporate being with its estate as an entirety, and embraces all its property, wherever situated or in whatever form.

4. RULE OF CONSTRUCTION.—In construing a constitutional provision, the declarations in debate of members of the convention which framed it, are not given controlling weight.

5. SAME.—As it has been the long-settled policy of the State to exempt such institutions from taxation, it will not be inferred that the framers of the Constitution intended to change that policy unless the intention be clearly expressed.

STONE AND SUDDUTH FOR APPELLANT.

1. In the act of March 11, 1862, amending appellant's charter, it was provided that the property of appellant "shall be exempt from all taxes whatever so long as it exists as a school of charity." This language unmistakably imports a contract between the State and the appellant by which the State agrees to exact no taxes in consideration of appellant's agreement to conduct a school of charity for the education of female orphans. (Revised Statutes, Vol. 2, p. 121; Franklin Co. Court v. Deposit Bank, 87 Ky., 370; Johnson v. Com., 7 Dana, 343; Farmers' Bank v. Com., 6 Bush, 127; Commissioners of Sinking Fund v. G. & B. Navigation Co., 79 Ky., 73; City of Henderson v. Strangers' Rest Lodge of Odd Fellows, 17 S. W. Rep., 215; Commonwealth v. Railroad Companies, 95 Ky., 60; Bank Tax Cases, 17 Ky. Law Rep., 465; Atwater v. Woodbridge, 6 Conn., 223; Home of the Friendless v. Rouse, 75 U. S. (8 Wall.), 430; Washington University v. Same, Ib., 439; St. Vincent's College v. Schaefer, 104 Mo., 261; University v. People, 99 U. S. (9 Otto), 309; Asylum v. New Orleans, 105 U. S., 362.)

2. The provisions of section 170 of the Kentucky Constitution were intended to operate prospectively only, and did not operate to repeal appellant's charter exempting its property from taxation.

(City of New Orleans v. Poydras Orphan Asylum, 33 La. Ann., 859; Orphan Asylum v. Tax Collector, 37 La. Ann., 68; State v. St. Joseph's Convent of Mercy, 116 Mo., 575; Morehead & Brown's Statutes, vol. 2, p. 1080, Act of Dec. 17, 1825; Revised Statutes of 1852, chap. 58, art. 1, sec. 1; General Statutes, edition of 1873, chap. 92, art. 1, sec. 3, pp. 709-10; Hewitt Law, Gen. Stats., edition of 1887, chap. 92, article 1, sec. 9, sub-sec. 5, p. 1036; Sections 4026 and 4020 Ky. Statutes (Barbour & Carroll, ed. 1894.)

3. Appellant is an institution of "purely public charity," as well as an "institution of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education," within the meaning of section 170 of the Constitution. And not only its buildings and property where the work of education is carried on are exempt, but all its property not used or employed for gain and the income of which is devoted solely to the cause of education. (Johnson v. Commonwealth, 7 Dana, 338; Farmers' Bank v. Commonwealth, &c., 6 Bush, 127; E. & P. R. R. Co. v. Trustees of Elizabethtown, 12 Bush, 236; Franklin County Court v. Deposit Bank, 87 Ky., 370; City of Louisville v. Commonwealth, 1 Duv., 298; Am. and Eng. Ency. of Law, vol. 25, pp. 159-60; Sisters of Charity v. Township of Chatham, 52 N. J. Law, 373-376; State v. Ross, 24 N. J. Law, 497; State v. Fisk University, 87 Tenn., 241; University of the South (Sewanee) v. Skidmore, Ib., 155; M. E. Church, South, v. Hinton, 92 Tenn., 188; Barbour v. Louisville Board of Trade, 92 Ky., 655-56-64; Commonwealth v. Masonic Temple Co., 87 Ky., 353; Lancaster v. Clayton, 86 Ky., 376; Clark v. Water Company, 90 Ky., 525; Henderson v. McCulloch, 89 Ky., 452; Higgins v. Prater, 91 Ky., 6; Humphries v. Little Sisters of the Poor, 29 Ohio St., 201; Gerke v. Purcell, 25 Ohio St., 229-244; Burd Orphan Asylum v. The School District of Upper Darby, 90 Pa. St., 21; Donohugh v. Library Company, 86 Pa. St., 306; Philadelphia v. Women's Christian Association, 125 Pa. St., 572; Episcopal Academy v. Philadelphia, 150 Pa. St., 565; Philadelphia v. Masonic Home, 160 Pa. St., 572-79-84; County of Northampton v. Lafayette College, 128 Pa. St., 132-47; Trustees Wesleyan Academy v. Inhabitants of Wilbraham, 99 Mass., 599; People v. Barber, 42 Hun. (N. Y.), 27; Monticello Female Seminary v. People, 106 Ill., 398 (46 Am. Rep., 702); Willard v. Pike, 59 Ver., 202; New Haven v. Sheffield Scientific School, 59 Conn., 163; Mt. Herman Boys' School v. Gill, 145 Mass., 139; City of Louisville v. Board of Trade, 90 Ky., 409; Am. and Eng. Ency. of Law, vol. 25, "Taxation;" County of Noble v. Hamline University, 46 Minn., 316-17; E. & P. R. R. Co. v. Trustees Elizabethtown, 12 Bush, 233; Commonwealth v. Railroad

Companies, 95 Ky., 60; County Commissioners of Frederick Co. v. Sisters of Charity of St. Joseph, 48 Md., 34; Appeal Tax Court v. Grand Lodge of Masons, 50 Md., 421; Trustees of Phillips-Exeter Academy v. Exeter, 58 N. H., 306; Washburn College v. Commissioners of Shawnee Co., 8 Kans., 344-9; County Commissioners v. Colorado Seminary, 12 Col., 497-504.)

LAF. JOSEPH FOR APPELLEE.

1. The word "institution" used in section 170 of the Constitution has reference to the place where the business or operations are carried on. Hence, an institution of purely public charity is the place, buildings and home of the charity, the things real or personal directly used in the operation or carrying on of a purely public charity. And an institution of education means the buildings, grounds, paraphernalia, instruments and other things, real or personal, with which the business of giving an education is carried on. (Anderson's Law Dictionary, 555, 769; Desty on Taxation, Vol. 1, 119-20; Cooley on Taxation, 140.)

2. The test of the right to exempt property from taxation, is the existence of the right to levy a tax to foster such property. A tax levied upon the people of Louisville to sustain a charity distant from the city, could not be upheld. Therefore, the property, located in Louisville, of such distant institution can not be exempted. (Barbour v. Louisville Board of Trade, 82 Ky., 654.)

3. Declarations by individual members of a constitutional convention in the debates, should not control the courts in construing the instrument. (Endlich on Interpretation of Statutes, 510.)

4. Property not used for educational purposes is not exempt, though it may be owned by the institution, and the proceeds devoted to carrying out the objects of the institution. (Am. & Eng. Ency. of Law, Vol. 25, pp. 162, 165, 166, 167; Washburn College v. Commissioners, 8 Kansas, 350; Commissioners v. Colorado, 12 Col., 497.)

5. A school where tuition is charged and where there is an income, which is used for the living of certain "brothers" or members of a brotherhood, is not a purely public charity. Institutions of education, the incomes of which are devoted solely to the cause of education, does not mean institutions, the incomes of which are devoted to charity or the church.

6. The use of the phrase "purely public charity" is an innovation in this State. The words "public charity" were those formerly used. The framers of the Constitution had these latter words before them, and when they changed the words "public charity" to "purely public charity" they meant to restrict the class of charities which had been embraced or construed to be embraced by the

474       KENTUCKY REPORTS.      [Vol. 100

Trustees of Kentucky Female Orphan School v. City of Louisville.

former expression. (Philadelphia v. Masonic Home, 160 Pa., 572 and 23 L. R. A., 545; Delaware Co. Institute v. Delaware Co., 94 Pa., 163; American S. S. Union v. Philadelphia, 161, Pa. St., 309; Mercantile Library v. Philadelphia, 161 Pa., 155.)

LAF. JOSEPH IN BRIEF ON RE-ARGUMENT.

1. When a statutory or constitutional provision is adopted from another State, the construction put thereon by the courts of that State is entitled to respectful consideration, but is not binding, and should only prevail in so far as it is in harmony with the spirit and policy of the general legislation of the home State. (Endlich on Interpretation of Statutes, section 371.)

2. To exempt the real estate of such charitable institution or educational institution, it is not enough that the income therefrom is applied to the purposes of the institution, but the real estate itself must be occupied for those purposes. (President of Williams College v. Assessors, 46 N. E. Rep., 394.)

3. The act of 1884 entitled "An act to amend the charter of the Southern Baptist Theological Seminary," does not conform to the provisions of the Constitution of 1850 that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." The act was intended to remove the charter of the institution from out the operation of the law of 1856, with reference to the repeal of charters, and nothing in its title indicates or suggests any such intention.

4. An amendment to a charter which provides for the exemption of property from taxation is not a contract within the meaning of Dartmouth College v. Woodward, 4 Wheat, 518; but is a mere gratuity or bounty which the State may withdraw at any time, and which in this case was withdrawn by the new Constitution. (Grand Lodge v. City of New Orleans, 12 Sup., Ct. Rep., p. 523.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT·

The question involved on this appeal is whether or not certain real estate situated in the city of Louisville and belonging to the Kentucky Female Orphan School, located at Midway, in Woodford county, is exempt from State, county and municipal taxation under the provisions of the Constitution on that subject.

The petition of the trustees seeking to enjoin the

collection of the taxes was dismissed on demurrer, and the facts to be considered are, therefore, undisputed.

It appears that the appellant was incorporated by the Kentucky Legislature in 1847, and its trustees were given the ordinary powers, rights and privileges of trustees of any other seminary of learning or academy in the State, with power to acquire by purchase, donation, etc., lands and other property to the extent of not exceeding $50,000. This limit has been increased to $400,000 by subsequent legislative enactment.

Section 7 of the charter provides "that the beneficiaries of the institution shall be female orphan children; and the board of trustees shall have power to determine the number that shall, at any time, be admitted into the institution; and, out of any number of applicants, they shall decide which shall be admitted; and shall also prescribe the time for which each beneficiary shall remain in the institution; and shall admit no one under nine years of age; and shall permit no one to remain longer than four years."

Section 8 is as follows: "That the board of trustees shall be the guardian of each beneficiary of the institution until she shall arrive at the age of eighteen years; and shall have all such power to control the conduct and actions of each beneficiary, as guardians now have by law to control the conduct and actions of their wards."

Section 9: "That pay pupils may be admitted into

the institution, the number and terms of admission being decided by a majority of the board of trustees."

A charter amendment of March, 1862, provides "that the property owned by the Kentucky Female Orphan School, at Midway, Woodford county, shall be exempt from all taxes whatever so long as it exists as a school of charity," and by further amendment (March 3, 1876) it is provided that the trustees shall fill vacancies in their board with "persons who are members in good standing of some congregation of the Church of Christ in the State of Kentucky."

It is alleged in the petition that the real estate sought to be sold for taxes was acquired by devise many years ago, and had been continuously rented out and the annual income used solely for the purpose of educating female orphans at its institution of learning at Midway, and that its property, both real and personal, from which it derives any income, including that in Louisville, constitutes an endowment fund for the purpose of carrying on its school of charity. That the pupils received are boarded and educated, and where they are indigent, and not otherwise provided for, are also clothed, wholly or in part, by the appellant while attending its institution; and that no part or parcel of its property has ever been used for gain by it or any person, and its income has always been devoted solely to the cause of education.

The provisions of the Constitution upon which the claim to exemption is based are as follows:

"Section 170. There shall be exempt from taxation

public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home and for no other purpose by the minister of any religion, with not exceeding one-half acre of ground in towns and cities, and two acres of ground in the country appurtenant thereto; household goods, etc., etc., etc., and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation for a period not exceeding five years, as an inducement to their location."

Upon the admitted facts, and they are attested in the current history of this beneficent institution, we are of opinion that the appellant is an institution of "purely public charity," within the meaning of the foregoing constitutional provision, as well as an institution of education "not used or employed for gain by

any person or corporation, and the income of which is devoted solely to the cause of education."

The name of the appellant is a significant index to its character, and the provisions of its charter sufficiently indicate its aims and purposes.   It is true that "pay pupils may be admitted into the institution," but manifestly this is merely that the "pay may be devoted to the general and main purpose of educating and supporting those who are unable to provide for their own support and education.   It is an exception, as is clearly inferable from the insertion of the provision, and not the rule that pay pupils are admitted.   An instructive definition of a "purely public charity" is found in Episcopal Academy v. Philadelphia, 150 Pa. St., 565, and is thus stated:

"1st.   Whatever is done or given gratuitously in relief of the public burdens, or for the advancement of the public good, is a public charity.   Where the public is the beneficiary, the charity is public, and where no private or pecuniary return is reserved to the giver or to any particular person, but all the benefit resulting from the gift or act goes to the public, it is a purely public charity, the word 'purely' being equivalent to wholly.

"2d.   A denominational school property, vested in trustees for the purpose of affording encouragement to the education of youth, is a purely public charity, although the school is not open in the same way to the general public as to persons connected with the religious denomination, but the general public are admit-

ted as vacancies occur, and, when admitted, upon the same terms with all other pupils.

"3d. An institution founded and endowed as a purely public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation."

A most satisfactory discussion of this question is found in the case of Burd Orphan Asylum v. The School District of Upper Darby, 90 Pa. St., 21, where a testatrix, by her will, provided for the establishment of an asylum, whose object should be the maintenance and education of white female orphan children, first, who shall have been baptized in the Protestant Episcopal Church in the city of Philadelphia, or in the State of Pennsylvania; and, second, all other white female orphan children, without respect to any other qualification except that the orphan children of clergymen of that church should have the preference. The discussion of the right to tax the property of the asylum takes a wider range than is needed for the purposes of this case, but it is pertinent particularly to cases being considered in connection with the present one, and we, therefore, quote liberally from it. The reasoning of the court in that case is as follows:

"It is conceded that the devise in question has created a charity which is public in the strict sense of that expression. But it is urged that it is not purely public, and hence that to apply the language of the act to this particular case would be a violation of the constitutional provision. Now it must be conceded, and it

has been decided here and elsewhere, that the word
'purely' is not to have its largest and broadest signifi-
·cance when used in this connection.   In the opposing
line of thought it is admitted that the word is to have
a limited meaning.   It is not contended that a charity
to be purely public must be open to the whole public,
nor to any considerable portion of the public.   With-
·out doubt an asylum for the support of fifty blind men,
or an equal number of paupers, would not be obnox-
ious to the objection that it was not purely "public."
A charity for the maintenance of disabled seamen, or
of aged and infirm stonemasons, resident in the city
of Philadelphia, would undoubtedly be a purely public
charity. ᐟ And so also would a charity for the educa-
tion and maintenance of the children of such persons.
And if such a charity should be limited to the white
female orphan children of such persons between the
ages of four and eight years, such limitations, though
they would very greatly restrict the class and the num-
ber of the beneficiaries, would constitute no valid ob-
jection to the purely public character of the charity.
But seamen and stonemasons are only designated
·classes of persons distinguished by their occupations.
A charity for the support of poor widows, or indigent
old men, or the insane poor, of a city, county, borough
or township would be equally a purely public charity,
no matter how small would be the number of the bene-
·ficiaries or how limited the class.

   "Why then would not a charity for the support of
poor Episcopalians, Catholics, Jews or Presbyterians

of a State or city be purely public; or a charity for the
education and maintenance of the orphan children of
such persons?    No private gain or profit is subserved;
the objects of such a charity are certain and definite,
and the persons benefited are indefinite within the
specified class.    The circumstance that the benefi-
ciaries are to be of a particular religious faith is only
of importance as designating the class.    It indicates
a certain portion of the whole community who are to
be recipients of the charity.    It has the same effect in
this respect as the words seamen, stonemasons, blind
persons, poor widows, etc., in the cases already men-
tioned.    For the purpose of defining the class of per-
sons who, as distinguished from all other persons in
the community, are to enjoy the benefit of the donor's
bounty the legal effect is the same, whether the words
used be seamen, Episcopalians, blind persons, Catho-
lics, poor widows, Jews, stonemasons or Presbyterians.
The argument that to sustain, as purely public, a char-
ity in favor of persons of a particular religious faith
would be to maintain sectarianism, is of no weight.
It is not discrimination in favor of a sect, for it is treat-
ing all sects alike.    It is not even extending a prefer-
ence to sectarians; it is merely recognizing them as a
class of persons.    We see no reason why that com-
munity which ranges persons into classes, so far as
this subject is concerned, may not be a community of
religious faith, as well as of occupation, condition in
life, sex, color, age, disability, physical or mental, or

Trustees of Kentucky Female Orphan School v. City of Louisville.

nationality. As to the meaning of the word 'purely,' when used in this connection, we concur in the construction which was given by the Supreme Court of Ohio in the case of Gerke v. Purcell, 25 Ohio St. Rep., 229, that "when the charity is public the exclusion of all idea of private gain or profit is equivalent in effect to the force of 'purely,' as applied to public charity in the Constitution."

See also Donohugh v. Library Company, 86 Pa. St., 306; and Philadelphia v. Women's Christian Association, 125 Pa. St., 572. In the latter case the court (page 579) said:

"It will be seen from the foregoing that the object of the association is to improve the temporal, moral and religious welfare of young females who are obliged to earn their own support, and that as a means to this end it furnishes them with food and lodging, not as paupers, but for a compensation which, while it does not compensate, aids in defraying the expenses, and thus preserves the self-respect of the recipients, while to others, who are unable to pay, temporary shelter is furnished free, and aid extended to them in the way of procuring employment. All this and much more is done by a band of devoted women who labor unselfishly, in season and out of season, giving their time and labor freely, and supplying the annual deficit in the treasury by contributions from themselves and their friends. There is no element of gain in the object or operations of this association. It is a public charity, and I regard it as a short-sighted policy in the

city of Philadelphia to seek to burden such an institution with taxation."

Again the court observes (page 581): "In the case in hand the stamp of charity is indelibly fixed upon the association. It appears in its charter, and is developed at every stage of its proceedings. Does the mere fact that it charges a small sum to a portion of those who feed at its table and enjoy the shelter of its roof, destroy its character as a purely public charity? * * * This whole subject was carefully considered in Donohugh's App., 86 Pa., 306. That was the case of the Philadelphia Library, an institution maintained by the annual contributions of members, from the income derived from such property as has been given to it, and from fees paid for the use of the books. The test in that case was the object of the corporation. That was found to be the general public good, and not private gain."

Regarding as settled that the appellant is such an institution as is entitled to the exemption under the terms of the Constitution, the question remains, what is meant by the word "institution" in that instrument? The chancellor seems to have conceded that appellant was an institution of purely public charity, and an institution of education such as is contemplated by the Constitution, but argues that if the different educational or charitable institutions of the State see fit to invest their endowment funds in real estate in the city, then to grant the appellant's contention might secure substantially the exemption of all the realty in the

Trustees of Kentucky Female Orphan School v. City of Louisville.

city. He, therefore, limited the meaning of the word "institution," and held it to embrace only local property, buildings, grounds, etc., so situated as to constitute a part of the institution itself. While the imaginary case put is altogether improbable, and can afford but slight clue to the meaning of the language used, it must be admitted the word "institution" is often used in the sense pointed out by the chancellor. Thus in Appeal Tax Ct., &c., v. St. Peter's Academy, &c., 50 Md., 345, in discussing the use of this word in an exemption statute, the court said: "The term 'institution' is sometimes used as descriptive of the building, establishment or place where the business or operations of a society or association are carried on, and at other times it is used to designate the organized body." The words under discussion there were "hospitals or asylums, charitable or benevolent institutions, so far as used for the benefit of the indigent and afflicted, and the ground which the buildings used as such hospitals, asylums, charitable or benevolent institutions actually cover." It was held that the language was appropriately descriptive of a building, establishment or place where the operations of an association or corporation are conducted, but wholly inappropriate as the designation of organized corporate bodies or associations."

In the case of Gerke, &c., v. Purcell, 25 Ohio St., 240, the constitutional provision was "but burying grounds, public schoolhouses, houses used exclusively for public worship, institutions of purely public char-

ity, public property used exclusively for any public purpose, * * * may be exempt, etc."

It was held that in a statute providing for the exemption of "all lands connected with public institutions of learning, not used with a view to profit," the word institution was used as descriptive of the establishment or place where the business or operations of a society or association is carried on, but in another section of the statute, where the property referred to is described as belonging to the institution, the word was used to designate the organized body. This case is instructive also in considering the feature first discussed, the court saying that the word charity, in its legal sense, "includes not only gifts for the benefit of the poor, but endowments for the advancement of learning, or institutions for the encouragement of science and art," and it was held that schools established by private donations, and which are carried on for the benefit of the public and not with a view to profit, are institutions of purely public charity within the meaning of the Constitution, which authorizes such institutions to be exempt from taxation. The court further said: "The maintenance of a school is a charity. Gifts for the following purposes have been declared to be charities: For schools of learning, free schools and scholars of universities (2 Story's Eq. Jur., section 1160); to establish new scholarships in a college (Attorney-General v. Andrews, 3 Ves., 633); to found and endow a college. (Attorney-General v. Boyar, 3 Ves., 714)," etc.

In the case of County of Nobles v. Hamline University, &c., 46 Minn., 316, the act considered provided that "all corporate property belonging to the institution, both real and personal, is and shall be free from taxation, and to the claim that "only the university itself and the necessary ground for its use" was exempt, the court replied as follows: "The proposition is based upon an untenable attempted distinction between the 'institution' and the 'corporation.' * * * The term 'institution,' although sometimes used as descriptive of the establishment or place where a business is carried on, properly means an association or society organized or established for promoting some specific purpose. The institution, as distinguished from the corporation, has no being, and is incapable of owning property. Had it been intended to limit the exemption to property directly used and occupied by the university, different language would have been used."

Many other cases are cited by counsel falling upon the one side or the other in the definition and use of this term, according to the language of the statute to be construed; and upon the whole it would seem that when the statute exempts the "institution" from taxation, and no qualifying words are used showing or tending to show that only the property "used" by the institution, or "connected" with the institution, is to be exempt, then the associated entity—the corporate being—with its estate as an entirety, is embraced by the word "institution."

. The exemption of the institution would thus embrace its endowment fund and property in whatever form these assets might be found. This is precisely what we find in the section under consideration, so far as reference is made to "institutions of purely public charity." Thus "there shall be exempt from taxation  *   *   * institutions of purely public charity," and there is to be found no qualifying clause or expression anywhere in the entire section.   There is no allusion to "buildings," or "grounds" used by or connected with "institutions of purely public charity," as is the case in many of the authorities referred to by counsel.   Finding no exception to the rule indicated, that where an "institution" of the character named is exempted, the charitable being, including necessarily the whole of its estate, is to be exempted, and, having determined the "Kentucky Female Orphan School" to be an institution of purely public charity, we might rest here with our investigation.   But it is proper in this case, and necessary in some of the others connected with it, to consider the succeeding clause of the section, "and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education."   Here it may be said, and with a show of technical accuracy, that whatever is meant by the words "institutions of education," something is meant which may be used or employed by a person or corporation.   And this can more fitly be said of the buildings and appurtenant grounds than of the corporate being.   For example,

we may appropriately say that the building, establishment or place where the business of the corporation is carried on shall not be "used or employed for gain by any person or corporation," while it would be rather inappropriate to say that the organized corporate body shall not be used or employed by any person or corporation. On the other hand, the clause "and the income of which is devoted," etc., could hardly mean income from the buildings, grounds, etc., but rather the income of the corporate body. Besides, we may notice that the attention of the framers of the section was called directly to the question of exempting the grounds attached to and appurtenant to certain places and houses used for certain purposes, but failed to provide any such limitation with respect to charitable and educational institutions.

Perhaps a brief reference to the origin of these provisions in our Constitution may be of assistance here. As originally proposed the section on the point involved only included the clause "institutions of purely public charity." There was no reference to institutions of education *eo nomine.* And upon a suggestion that institutions of this character ought to be provided for, it was argued at length by a distinguished delegate that the language already in the proposed section fully covered the question.

In support of this position that "institutions of purely public charity" embraced institutions of education not operated for private gain, a distinguished delegate read on the floor of the convention copious

extracts from the Pennsylvania cases cited.    While not controverting this position, the particular friends of education argued that the Kentucky courts might not adopt the Pennsylvania construction, and secured the insertion of the clause, as it now appears in the section, in order to make it certain that educational institutions not controlled for private gain and the income of which was devoted to that cause, should be exempt.    And while the endowments of some of the more prominent institutions of learning in the State were referred to during the discussion as fit subjects for exemption, if there was any objection raised or difference of opinion suggested as to the propriety of the proposed exemptions, there seems to have been no record of it.    We are aware that the weight to be given the declarations of members of the convention is not to be taken as controlling.    Mr. Endlich says of these declarations:    "They give us no light as to the views of the large majority who did not talk; much less of the mass of our fellow citizens whose votes at the polls gave that instrument the force of fundamental law." (End. In. Stat., 510.)

Yet confessedly it must be a source of satisfaction to those who are called on to ascertain the intention of doubtful provisions to find the conclusions arrived at to be in accord with, and not in opposition to, the views of the framers of the law so far as expressed.

We think, therefore, a proper construction of the language used in the section requires the exemption of the entire property of this institution wherever situ-

ated, and in whatever form its investments may be found.

This construction of the language of the Constitution is in accord with the long-settled policy of the State.

By the Kentucky act of December 17, 1825 (2 Morehead & Brown Statutes, section 1080), it was provided: "Hereafter the trustees or managers of such schools or seminaries of learning within this Commonwealth shall not be bound to list such lands for taxation or to pay any taxes on the same.   Nor shall any taxes be demanded by the State for any such lands, so long as the same shall absolutely and *bona fide* belong to a seminary or school of learning."

This statute, and the public policy it recognized and enforced, was continued in the Revised Statutes of 1852, chapter 58, article 1, section 1, as follows:  "Be it enacted by the General Assembly of the Commonwealth of Kentucky, that lands held by a school or seminary shall not be subject to taxation or forfeiture for any cause whatsoever."

And the same policy, exempting all the property of institutions of learning, was continued in the General Statutes, as follows:  "The real estate and investments devoted to public schools, seminaries, universities, colleges, courthouses, clerks' offices, jails, public graveyards, lunatic, orphan and deaf and dumb asylums, hospitals, infirmaries, widows' and orphans' asylums, foundling asylums."   (General Statutes, chapter 92, article 1, section 3, pages 709-710, original edition of 1873.)

And the Hewitt revenue law of 1886 provided: "The following property shall be exempt from taxation: Public schools, churches and all property of seminaries, asylums, hospitals, infirmaries and colleges, and all other funds devoted to charitable purposes * * * except those owned by joint stock companies or associations which declare dividends: Provided, that nothing herein shall be construed as exempting any property which is used or employed for gain of any person, nor any property of which the products, rents or uses are not devoted solely to the objects of the institution, as distinguished from personal gain of the individuals connected with the institution."

Under these statutes we are not aware that endowments of asylums, colleges, etc., not operated for the personal gain of individuals connected with the instition, have ever been taxed; and it is inconceivable that an intention to reverse the policy of the State in this respect should have been declared in language so poorly expressive of such intention.

As said by the Supreme Court in United States v. Ryder, 110 U. S., 729: "The revisers would not have proposed, nor would Congress have made, such a fundamental change in the law * * * without employing more appropriate terms for that purpose than those which the section contains. It will not be inferred that the Legislature, in revising and consolidating the laws, intended to change their policy unless such intention be clearly expressed." Except for the con-

Trustees of Kentucky Female Orphan School v. City of Louisville.

stitutional enactment the contention of the appellees that such exemptions would be subversive of the principles announced in the Bill of Rights might be of some force, but the Constitution must be held to be consistent with itself, and the policy adopted must be carried out. But even before the present Constitution was adopted this policy was recognized and enforced in the courts. In Higgins v. Prater, 91 Ky., 18, in sustaining a tax for the Agricultural & Mechanical College, this court said: "Other institutions of an educational character, and which do not constitute a part of our common school system, have for years been supported by general taxation. * * * The framers of our Constitution and the people adopting it were not moved by a fear of too much education, but of too little."

In Taber v. Louisville Baptist Orphans' Home, 92 Ky., 91, it is said: "It is the duty of the State to care for its indigent orphans, and if done by another, he renders what is a public service, and the Legislature may, therefore, without regard to the extent of it, exempt the property devoted to such use from taxation."

We have already considered—perhaps sufficiently—the nature of this institution, but in view of the appellee's appeal to the Bill of Rights, it is not improper to note from the year book of the institution (1892) the objects it has in view. "The primary object of this institution is to educate such orphan girls as can not obtain an education in any other way, and to qualify them for teaching. * * * We receive three classes of girls, as follows:

"1st.  Destitute orphans, who have no relatives or friends to aid them.

"2d.  Orphans destitute of means and of relatives able to aid them, but whom churches or benevolent societies are willing to sustain at the school.

"3d.  Orphans who have some means, but not enough to support them in other schools.

"Precedence is given the first class, and as many of them are received as the proceeds of the endowment will justify."

If this be not an institution of "purely public charity," and entitled to the aid of the State, one can hardly be found in the State.  Other reasons for the exemption are urged by the appellant, but it is deemed unnecessary to consider them.

For  the reasons given the judgments are reversed for proceedings consistent with this opinion.

Judges Guffy and DuRelle dissenting.

AFTER THE RE-ARGUMENT OF THE CASE JUDGE DU RELLE DELIVERED THE FOLLOWING DISSENTING OPINION, IN WHICH JUDGES GUFFY AND WHITE CONCURRED:

We dissent from the opinion of the majority in these cases, and will state briefly the grounds of dissent.

The question for decision is whether real estate in the city of Louisville, owned by the appellant, is exempt from State, county and city taxation under the provisions of section 170 of the Constitution of Kentucky.

The other questions made in argument were not passed on in the opinion of the court, and need not be considered here.

Trustees of Kentucky Female Orphan School v. City of Louisville.

The exemption is claimed under section 170 of the present Constitution, which, so far as applicable to the question in this suit is as follows:

"Sec. 170.   Property exempt.   Cities may exempt manufactories.   There shall be exempt from taxation public property used for public purposes; places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country, places of burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education, public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society, and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country appurtenant thereto."

In connection with this section we must consider certain other sections of the Constitution in so far as they indicate the purpose of the instrument, and shed light upon the section under consideration.   It should be remembered that there is nothing corresponding to this section in the Constitution of 1850.   The same may be said of the provisions of section 3, which is as follows:

"Section 3.   All men when they form a social com-

pact are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services; but no property shall be exempt from taxation, except as provided in this Constitution; and every grant of a franchise, privilege or exemption shall remain subject to revocation, alteration or amendment."

Section 5 contains this provision:    "No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity; nor shall any person be compelled to attend any place of worship, to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion; nor shall any man be compelled to send his child to any school to which he may be conscientiously opposed."

In this connection we quote the corresponding provision of the old Constitution, section 5, article 13 of the Bill of Rights of the Constitution of 1850, as follows:

"Section 5.  That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; that no man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; that no human authority ought, in any case, whatever, to control or interfere with the rights of conscience; and that no preference shall ever be given by law to any religious societies, or modes of worship." .

Section 171 of the present Constitution provides:

Trustees of Kentucky Female Orphan School v. City of Louisville.

\* * * "Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax." And section 174 contains the following: "All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempted by the Constitution."

It is evident from the provisions quoted that the policy of the new instrument was intended to be different from that of the old in the matter of exemptions from taxation. The change is significant, when in connection with section 5, we consider the provision in section 3 that "no property shall be exempt from taxation except as provided in this Constitution;" the provision in section 171 that taxes shall be levied and collected for public purposes only and shall be uniform upon all property subject to taxation; and the provision of section 174 as to uniformity of taxation of corporate property with that of individuals.

The policy of the new Constitution was to do away with exemptions. Out of deference to the supposed views of the religious element of the community, certain specific exceptions were made, and while we do not contend that these should necessarily be strictly construed, they should certainly not be extended by implication to any property not fairly within the meaning of the Constitution. Except in so far as the Constitution provides, nothing can be exempted from taxation which might not be supported by taxation. Un-

Trustees of Kentucky Female Orphan Schocl v. City of Louisville.

doubtedly the exemption of any property works an in-
crease of the burden on property which is not ex-
empted, and the placing of a burden upon property by
taxing it to a greater extent in order to exempt other
property is to that extent a taking of property without
just compensation.

With these principles in mind, the construction of
section 170 is simple.   First, public property is ex-
empted.   Next, places actually used for religious wor-
ship with the ground attached, with a limitation upon
the extent of the ground.   Next, places of burial not
held for private or corporate profit.   Next, institutions
of purely public charity, and then in the same clause,
institutions of education not used or employed for gain
by any person or corporation, and the income of which
is devoted solely to the support of education.   This
case, in which the main opinion of the majority was
rendered, turned upon the construction of this phrase,
"institutions of purely public charity and institutions
of education not used or employed for gain;" and the
first question is, what is meant by "institutions?"   Un-
doubtedly, in the latter part of the clause the word "in-
stitution" is used to denote the physical, corporeal prop-
erty employed for the purpose of education, and it is a
cardinal canon of construction that where, in one part
of a clause of a statute, a word having two meanings is
undoubtedly used in one sense, it will be construed to
be used in the same sense in the other parts of the sec-
tion, unless such construction is forbidden by the con-
text.

It is practically admitted in the opinion that the words used or employed "for gain" apply, and can apply only to the tangible property employed for the purpose of education. We can conceive of no reason for attributing to the phrase a different meaning when used as to institutions of purely public charity. If it had been intended to exempt the endowment of institutions of public charity and institutions of education, it may fairly be argued that the same phrase would have been used which is used in the succeeding clause as to public libraries whose endowments are exempted together with the income of such property as is used exclusively for their maintenance, and this is done as to libraries in express terms. So, in the next succeeding clause as to any parsonage or residence owned by a religious society, and occupied as a home, and for no other purpose by the minister of any religion. Further, the lands attached to places used for religious worship and the lands appurtenant to parsonages are limited in extent. But in this case, institutions of purely public charity are construed to mean the corporations which conduct such institutions and all property belonging to such corporations is exempted from taxation. We can not assent to such a construction. Such a conclusion would lead not only to manifest injustice in the matter of placing burdens upon the other property in a community, but would lead corporations conducting such institutions to select for the purpose of investment those cities and towns which had the highest tax rate, in order to benefit by the advantage thereby given

in competition for tenants. For, just in proportion as the surrounding property is subjected to a greater tax, is a greater bonus given to the corporation which owns the exempted property, a part of which bonus it can afford to give in the shape of a reduction of rent, whereby to entice tenants away from the owners of the surrounding property. Just in proportion to the increase of exempted property held by such corporations in a city or town, must the tax rate become higher, and the inducement greater to such corporations to invest their surplus there. And this leads to further injustice. The tenants of such a corporation, induced to become such by a reduction of rent, are thereby enabled to undersell their neighbors, who are compelled to contribute their just proportion toward bearing the burden of taxation placed upon the property they occupy. Is it conceivable that the Constitution was intended to work such injustice?

It is matter of State history, which the court can and ought to take knowledge of, that the present Constitution was proclaimed to the people as putting a limit upon exemptions. Legislatures no longer were to work their will by exemptions in favor of the particular sect which the majority happened to favor, or to pool their issues in favor of a number of sects whose adherents might constitute a majority. Specific exemptions were made in favor of property devoted to certain uses, which were supposed to furnish an excuse, if not a reason, for relief from the common burden. With great ingenuity, limitations more apparent than real,

Trustees of Kentucky Female Orphan School v. City of Louisville.

were placed upon these exemptions, and the finished instrument was spread before the people as an enduring check upon the power of future legislatures to tax one man's property for the purpose of exempting another's. Moved by these and similar representations, the people voted by a majority of some hundred and forty thousand that this instrument should be their fundamental law. And with what result? To fasten upon their necks a burden of constitutional exemptions, which can only be removed by a new constitutional convention or a constitutional amendment; to place limitations not upon the legislative power to grant exemptions, but upon their own power to refuse, control, or repeal them. It is to no purpose to cite the language of the debates. Endlich says of the declarations of members of a convention: "They give us no light as to the views of the large majority who did not talk; much less of the mass of our fellow citizens whose votes at the polls give that instrument the force of fundamental law." (Endlich In. Stat., p. 510.)

And every one who knows anything of conventions and legislatures knows that the declarations of the speakers not only do not represent the convictions of those who do not speak, but frequently do not give the real views of the speakers themselves. Speeches in such bodies are not even supposed to be made for the mere purpose of declaring the views of the speakers, but for the purpose of influencing the votes of the listener. Hence, another than the real reason for the advocacy of a provision is often given, and another

than the true interpretation of the language of a section is too often suggested in argument. Members who are in the minority strive for the substitution of less definite language than that proposed by the majority, with the purpose of taking their chances in the courts. But it is not by the declarations, more or less sincere, of the individual members of the convention, nor the understanding of the majority, that the instrument obtains validity or its meaning is to be ascertained. It is the votes of the plain people which give it force and effect, and from this fact flows the wise rule of constitutional construction, universally acknowledged by the courts since the foundation of the government, though too often disregarded in practice, that the language of such an instrument is to be construed according to its ordinary and common meaning, and that sense is to be given its provisions which was understood by the people whose ballots made it organic law.

Applying this test to the provision in question, we find a sectarian charity school, operated by a corporation created by a special act which provided "that the institution shall be located in the town of Midway, in the county of Woodford." It comes to this court claiming exemption from taxation upon property situated in Louisville which is leased to tenants for various purposes, and the rents from which are applied to carrying on the institution at Midway. Waiving the question whether the charity thus provided for is purely public, about which there is grave doubt, the

question arises how many Kentucky voters had an idea that they were authorizing the exemption of houses in Louisville, the rents of which were used to carry on an institution at Midway? That the word "institution" in this section was understood by the people to denote the physical property used for the charitable or educational object, there can be little doubt. Not one voter in a thousand would imagine that in speaking of an institution not used or employed for gain by a person or corporation, the word "institution" was used to mean a corporation. It would instantly occur to the average man that the words used could not have been intended to provide for the case of a corporation not used for gain by a corporation, and that the thing meant by institution was the land and house and appurtenances used for the conduct of the charity, or for the educational purpose. If it was not so meant by the framers of the instrument, it must have been intended to deceive the people. So the income of an institution of education must be limited to the income which is derived from tuition fees. Authority is abundant in favor of the construction here stated.

"Property from which a revenue is derived is not exempt. Property used exclusively as a general dispensary is exempted; but lots and buildings thereon, when an investment, the income of which is to be applied to the purposes of the dispensary, and stocks and public securities held by it, are subjects of taxation.

"The fact that the rents and revenues of a property owned by a charitable corporation are devoted to the

charitable purposes for which the corporation was organized, will not exempt such property from taxation.

"It is only when the property itself is actually and directly used for charitable purposes that the law exempts it from taxation." Desty on Taxation, Vol. 1, 119. And again:

"A building of a benevolent society is liable to taxation to the extent of the value of the rental received.

"The building of a benevolent society leased for pecuniary profit is taxable, although built with funds that were exempt, and into which the rents are paid.

"Where the property of a benevolent society was leased, for business purposes, and an income derived therefrom, its status as taxable property is thereby fixed." (Desty on Taxation, Vol. 1, 120.)

"Where a statute exempts from taxation property devoted to religious, educational, or other purposes, or exempts the property of a corporation, the exemption will be confined in the former case to property used exclusively for such purposes; in the latter, to property necessary to the objects of the company's corporation." (Am. & Eng. Ency. Law, Vol. XXV, 162.)

"Unless the terms of the statute are explicit to the contrary, a general exemption of the property of the educational institution will be confined to property actually and exclusively used by the institution for its legitimate purposes. If the property is used for other purposes, the fact that the proceeds of such use are devoted to carrying out objects of the institution is immaterial." (Ibid, pp. 165, 166, 167.)

(And see Washburn v. Commissioners, 8 Kan., 350, and Commissioners v. Colorado, 12 Col., 497.)

An exemption to one is a tax upon others, and the language of the Constitution should not be strained to authorize such an act of injustice. This court has said :

"As a general rule, the test of the right to exempt property is the existence of the right to levy a tax to foster such property. The levy of a direct tax upon the whole people of the State, to be paid to this corporation to forward the objects stated in their charter, would be declared at first blush unconstitutional, and yet that is what is indirectly done by the exemption. If the same power exercised by this corporation had been conferred upon a designated individual, it would strike any one as palpably beyond legislative authority. But there is no difference in principle between the corporation and an individual. If there is the power to exempt the one, there is unquestionably the power to exempt the other." (Barbour, &c. v. Louisville Board of Trade, 82 Ky., 654.)

It would be unprofitable to discuss the many collateral questions which have been urged or suggested. The claim of contract exemption seems to us to have little merit, and is not relied on in the opinion of the majority. The question whether a corporation would be exempt under section 170, which was created for the purpose of education to be imparted by the corporators, with a provision devoting the surplus revenue to charity, after providing a liberal salary for the corporators, does not properly arise in this case.

It may be mentioned that the reasoning of the opinion in Burd Orphan Asylum v. Upper Darby School District, 90 Pa., 21, much relied on in support of the opinion of the majority upon the question of what is a purely public charity, has been questioned by the same court in Philadelphia v. Masonic Home, 160 Pa., 572 and 23 L. R. A., 545; the reasoning of the later case being in direct conflict with that of the former.

The importance of the main question in this case can scarcely be over estimated.   It is not a mere question of the taxes sought to be collected upon Louisville property belonging to the female orphan school as the most casual glance at the statistics given in the census reports will show.   Behind the little Midway school stalk great sectarian corporations, "rich beyond the dreams of avarice;" directed, no doubt by honest and devoted men, but, as corporations, demanding, as of right, from the State, and the municipality, privileges which no good citizen ought to ask for himself.   The result is to be deplored, not only as it works an increase of the burden of taxation already sufficiently onerous, upon the masses of the people, but in the inevitable reaction against corporations formed for worthy objects, but which seek to profit by injustice.