City of Newport v. Masonic Temple Association.

CASE 41—ACTION TO RECOVER TAXES—APRIL 20.

# City of Newport v. Masonic Temple Association.

APPEAL FROM CAMPBELL CIRCUIT COURT.    SECOND APPEAL.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    REVERSED.

EXEMPTION OF INSTITUTIONS OF PUBLIC CHARITY FROM TAXATION.

Held:    Under section 170 of the Kentucky Constitution which provides that institutions of "purely public charity" shall be exempt from taxation, a Masonic lodge which provides for its members and their families, or the widows and orphans of those who are dead, is not exempt from taxation, it being a private and not a public charity. For former report see 45 S. W., page 881.

ROOT AND ROOT ATTORNEYS FOR APPELLANT.

1. The only issue presented on this appeal is whether or not the appellee is an institution of purely public charity within the meaning of section 170 of the Kentucky Constitution.

2. Under its plea, its first duty is to relieve the distressed and indigent members of the association and their families, and lastly to relieve other distressed and indigent persons, and we contend that this plea does not constitute the appellee a purely public charitable institution. City of Newport v. Masonic Temple Association, 20 Ky. Law Rep., 266-7-8; Kentucky Constitution, sec. 170; Acts 1879, vol. 1, page 657; Acts 1885 and 1886, vol. 1, page 410; Trustees Female Orphan School v. City of Louisville, 19 R., 1092; City of Louisville v. Southern Bap. Theo. Seminary, 19 R., 1100; City of Louisville v. Board of Trustees, Nazareth, &c., 19 R., 1103; City of Henderson v. Strangers' Rest Lodge

City of Newport v. Masonic Temple Association.

No. 13, I. O. O. F., 17 R., 1041; Bangor v. Masonic Lodge, 73 Maine, 428; 40 American Reporter, 369; Massenberg v. Grand Lodge, 81 Ga., 212; Morning Star Lodge v. Hayslip, 23 O. S., 144; Del. Co. Ins. v. Delaware Co., 94 Pa. State, 163; Donohugh's Appeal, 86 Pa. State, 306; Bobb v. Reed, 5 Rawle (Pa.), 151; Savannah v. Solomon Lodge, 53 Ga., 93; Indianapolis v. Grand Master, 25 Ind., 518; State v. Board of Assessors, 34 La., 574; City of Louisville v. Board of Trade, 12 R., 397; Desty on Taxation, 1 vol., 119.

C. J. & W. W. HELM, ATTORNEYS FOR APPELLEE.

1. We concur with attorneys for appellant that "the only issue presented on this appeal is whether or not the appellee is an institution of purely public charity within the meaning of section 170 of the present Constitution."

2. Under the plea we limit our inquiry to whether or not a charity which only extends to a part of the public is a purely public charity.

3. Distressed or indigent Masons and their families are a part of the public who may require relief from the public authorities, therefore an institution which relieves the needs of this class of the public takes a burden from the public and becomes to that extent a purely public charity.

4. We submit that an institution that has no other purpose in view than the relief of persons who may become objects of charity on the general public, is an institution of "purely public charity." 19 Ky. Law Rep., 249, Bank Tax Case; Kentucky Constitution, secs. 170 and 174; Trustees Ky. Female Orphans' School v. City of Louisville, 19 Ky. Law Rep., 1091; City of Louisville v. Southern Bap. Theo. Seminary, 19 Ky. Law Rep., 1100; City of Louisville v. Board of Trustees Nazareth Institute, 19 Ky. Law Rep., 1102; City of Henderson v. Strangers' Rest Lodge, 17 Ky. Law Rep., 1040.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The only question involved in this action is whether the appellee's property is exempt from taxation. This is the second appeal of the case. The opinion on the former appeal is reported in 45 S. W., 881. By the charter of the association enacted in the year 1866, it was provided that its property and income should be exempt from all

taxation so long as it was entirely devoted to Masonic
and charitable purposes.  On the former appeal it was
held that this provision of the charter was repealed by
the present Constitution of the State, which took effect
September 28, 1891.  But whether the property of the
association was subject to taxation or exempt under the
provisions of the Constitution was not determined, as
the case was not so prepared as to present this question.
Section 170 of the Constitution is as follows:  "There
shall be exempt from taxation public property used for
public purposes; places actually used for religious wor-
ship, with the grounds attached thereto and used and
appurtenant to the house of worship, not exceeding one-
half acre in cities or towns, and not exceeding two acres
in the country; places of burial not held for private or
corporate profit, institutions of purely public charity, and
institutions of education not used or employed for gain
by any person or corporation, and the income of which is
devoted solely to the cause of education; public libraries,
their endowments, and the income of such property as
is used exclusively for their maintenance; all parsonages
or residences owned by any religious society, and occupied
as a home, and for no other purpose, by the minister of
any religion, with not exceeding one-half acre of ground
in towns and cities and two acres of ground in the country
appurtenant thereto; household goods and other personal
property of a person with a family, not exceeding two
hundred and fifty dollars in value; crops grown in the
year in which the assessment is made, and in the hands
of the producer; and all laws exempting or commuting
property from taxation other than the property above
mentioned shall be void.  The General Assembly may au-
thorize any incorporated city or town to exempt manu-

facturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location."

On the return of the case to the court below, appellee filed an amended answer, setting up the defense that it is an institution of purely public charity. To this answer appellant filed a reply, to which the court below sustained a demurrer, and dismissed the action.

It appears from the record that appellee is the owner of a four-story brick building and the ground on which it stands; that the lower floor is rented by the United States Postmaster, and used as a post-office at an annual rent of about $1,000; that the second floor is rented out for offices and living rooms at an annual rent of about $700; and that the third and fourth floors are used by the association for the purposes of its organization. It also appears that only the first and second stories which were rented out were assessed for taxation. It is admitted in the reply that all of appellee's income and revenue is devoted—First, to the payment of the balance of debt for erecting the building sought to be taxed; second, to relieve distressed and indigent members of the Masonic order and their families. But it is alleged that the association, so far as it dispenses charity at all, confines itself exclusively to its members and their families, or, if the members are dead, to their widows and children, or to those who are directly or indirectly connected with the association; that it does not extend charity to all alike, or to those not in any way connected with the association; and that its charity is governed by the following by-law: "The master and wardens of this lodge shall constitute a charitable committee, whose duty it shall be, on application, carefully to inquire into the situation and

circumstances of indigent brethren, their widows and orphans, and afford them the necessary relief; for which purpose they shall have power to draw on the treasurer in the recess of the lodge for any sum, not to exceed ten dollars for any one person, and they shall at the next meeting after such relief has been granted report the same to the lodge, which shall be entered on the minutes."

The question in the case is therefore whether, under these facts, appellee is an institution of purely public charity, and as such exempt from taxation, under the section of the Constitution above quoted. By the statutes in force previous to the adoption of our present Constitution, all property "devoted to charitable purposes" was exempt from taxation. General Statutes, p. 1036. If this rule was still in force, appellee's property would, under some authorities, be exempt, as it is, in one view, devoted to charitable purposes. But the Constitution was intended to modify the exemptions theretofore allowed, and now only institutions of purely public charity are exempt. While this is a new provision in this State, it has long been in force in a number of other States. The purpose of its adoption in this State was to exclude from exemption all charities not purely public. The words "purely public" need no definition. They do not include any restricted or private charities. These may be very valuable, and the spirit prompting them is much to be commended; but the exemption of property from taxation had assumed such proportions at the time of the adoption of our present Constitution that it was seen fit not to exempt property from taxation unless devoted to a purely public charity.

A Masonic lodge, which provides for its members and

their families, or the widows and orphans of those who are dead, is a commendable private charity; but it is in no sense purely public. This question has often been presented to the courts, and, so far as we have seen, under provisions like ours, the decisions are uniform. The Constitution of Ohio is the same as ours. In Lodge v. Hayslip, 23 Ohio St., 144, the facts were substantially the same as here. The court said: "A charitable or benevolent association, which extends relief only to its own sick and needy members, and to the widows and orphans of its deceased members, is not 'an institution of purely public charity,' and its moneys held and invested for the aforesaid purposes are not exempt from taxation." The Constitution of Pennsylvania is also the same as ours. In Philadelphia v. Masonic Home of Pennsylvania, 160 Pa. St., 572, (28 Atl., 954), (23 L. R. A., 545), the question was whether the property of the Masonic Home, open only to those who were Masons, was exempt. The court said: "When the eligibility of those admitted is thus determined, it seems to us that the institution is withdrawn from the public, and put in the class of private charities."

A charity may restrict its admissions to a class of humanity, and still be public. It may be for the blind; the mute; those suffering under special diseases; for the aged; for infants; for women; for men; for different callings or trades by which humanity earns its bread; and, as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public. But when the right to admission depends on the fact of voluntary association with some particular society, then a distinction is made which concerns not the public at large. The public is interested

in the relief of its members, because they are men, women, and children, not because they are Masons. A home with- out charge, exclusively for Presbyterians, Episcopalians, Catholics, or Methodists, would not be a public charity. But then, to exclude every other idea of public as dis- tinguished from private, the word 'purely' is prefixed by the Constitution. This is to intensify the word 'public,' not 'charity.' It must be purely public; that is, there must be no admixture of any qualification for admission heterogeneous, and not solely relating to the public. . . . If this [charity] be purely public, then what is not purely public? This is not a question to be decided on senti- ment. If it were, our inclinations would prompt to a dif- ferent conclusion. But there is not much sentiment in the Constitution. It is a barrier erected by the whole people against encroachments on the rights of the people as a whole."

In the previous case of Delaware County Institution of Science v. Delaware County, 94 Pa. St., 163, an institute of science for "the promotion and diffusion of general and scientific knowledge among the community at large, and the establishment and maintenance of a library and museum," the benefits of which were restricted to mem- bers except upon conditions prescribed by a board of man- agers, was held not exempt from taxation. The court said: "The plaintiff in error, so far from being a purely public charity, is not a public charity at all. It is a pri- vate corporation, for the benefit of its members, as much so as any other beneficial or literary society." In Bangor v. Lodge, 73 Me., 428, a Masonic lodge was held subject to taxation under a statute much broader in its exemption than our Constitution. Among other things, the court said: "The just and honest rule in assessment for govern-

mental purposes is equality of taxation. Whatever sac-
rifices it requires from the people should be made to bear
as nearly as possible with the same pressure upon all.
In this way only will there be the least sacrifice by all.
If one bears less than his share of the public burden,
some other must bear more. If one block of stores re-
mains untaxed, the remaining stores and other taxable
property must be unduly and disproportionately taxed.
The more numerous the exemptions the more unequal and
burdensome the taxation." Then, after showing that an
exemption must be construed with the utmost strictness,
and that the party claiming it must bring his case unmis-
takably within the spirit and intent of the exception, the
court said: "It is apparent that the defendant corpora-
tion can not be regarded as a purely public charitable
institution, because it wants the essential elements of a
public charity. It has other objects than charity. What-
ever its ultimate purposes, they are other than charitable.
Its funds are derived, not from devises and gifts as in
case of a public charity, but from fees and the assess-
ment of its members. The funds so obtained are to be
distributed among the poor and needy members from
whom they were collected, and among their wives and
children. It is an association for the mutual benefit of
its members, and not a charitable institution, within the
meaning of the statute." In Babb v. Reed, 28 Am. Dec.,
650, an Odd Fellows lodge formed for the purpose of em-
ploying certain funds for the mutual benefit of its mem-
bers and their families was held not to be an association
for charitable uses. 5 Rawle, 151. See, also, State v.
McGrath, 95 Mo., 193, (8 S. W., 425); State v. Central St.
Louis Masonic Hall Ass'n, 14 Mo. App., 596. In Young
Men's Protestant Temperance & Benevolent Soc. v. City

of Fall River, 160 Mass., 409, (36 N. E., 57), it was held. that a temperance society, which used its funds exclusively for the benefit of its' members, was not exempt from taxation as a charitable institution. The same rule was followed as to a Young Men's Christian Association having a similar rule in New Jersey, in Trustees of Young Men's Christian Association v. City of Paterson, 39 Atl., 655, and in Maine, in City of Auburn v. Young Men's Christian Association of Auburn, 29 Atl., 992; no question of religious uses being made in either of these cases. In South Carolina, in Society v. Addison, and Lodge v. Same, 2 S. C., 499, the same rule was followed, and it was held that neither of the appellants was entitled to the exemption. Summing up the authorities, the learned author of 12 Am. & Eng. Enc. Law, (2d Ed.), p. 343, says: "While there are decisions to the contrary, the preponderance of authority is in favor of the doctrine that an exemption of benevolent and charitable institutions does not extend to a society which confines its benefits to members or their families." The contrary decisions to which he refers are all under provisions exempting simply charitable institutions. In none of them was the exemption confined to institutions of purely public charity, and in several of the cases this distinction is pointed out. The case of City of Henderson v. Strangers' Rest Lodge, (Ky.), 17 S. W., 215, was decided under the statute then in force, which was materially different from our present constitutional provision. The cases of Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky., 470, (36 S. W., 921); City of Louisville v. Southern Baptist Theological Seminary, 100 Ky., 506, (36 S. W., 995); and City of Louisville v. Board of Nazareth Literary & Benevolent Inst., 100 Ky., 518, (36 S. W., 994), were based on grounds

not appearing in this case, all these institutions being educational and not charities, restricted to the members of any church or society; and, in view of the plain intent of the Constitution, we are not at liberty to extend the rule announced in those cases to an institution like appellee. There are many commendable organizations owning a large amount of property, and doing often much work of benevolence, such as the Knights of Pythias, the Elks, the Odd Fellows, the Red Men, Sons of Temperance, and the like; but so long as they confine their beneficence to their own members, or their widows and orphans, or are not designed for charitable purposes purely public, they can not be regarded as institutions of "purely public charity," within the meaning of our Constitution. To so hold would be to give substantially no effect to the words "purely public" in that instrument, and leave few, if any, private charities which would not be exempt from taxation. The section is framed so minutely that it is impossible to escape the conclusion that it was designed to narrow exemptions from taxation, and to limit them to the objects expressly named. It must be fairly construed, with a view to promote its purposes, and the exemptions allowed by it can not be extended by implication. The judgment of the court below is therefore reversed, and the cause remanded, with directions to overrule the demurrer to the reply, and for further proceedings not inconsistent with this opinion.

.JUDGE PAYNTER'S DISSENTING OPINION.

I dissent from the opinion of the court in this case, because it disregards the doctrine announced in the cases of Trustees of Kentucky Female Orphan School v. City of Louisville, (Ky.), 36 S. W., 921; City of Louisville v. South-

ern Baptist Theological Seminary, Id., 995; City of Louis-
ville v. Board of Trustees of Nazareth Literary & Benevo.
lent Inst., Id., 994.