## Commonwealth, By et al. v. Parr's Executor, et al.

(Decided November 24, 1915.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Charities—Purpose and Objects—Gifts.—A charity, in its legal sense, is a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.

2. Taxation—Charities—Public Charities.—"Parr's Rest," a permanent Home for old and destitute women residents and citizens of the State of Kentucky, who have no estate of their own, and who are unable to provide for themselves the necessaries of life, is an institution of purely public charity, and is, under Section 170 of the Constitution, exempt from taxation.

3. Taxation—Charities.—Where the executors under a will which created a charity, withheld the funds so devised from the trustees of the charity for several years pending a contest of the probate of the will, the equitable title to the property so devised was in the trustees of the charity during the time it was so withheld from them, and was exempt from taxation.

M. J. HOLT and A. SCOTT BULLITT for appellants.

O'NEAL & O'NEAL, N. T. WHITE and H. P. REAGER, JR., for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

Daniel G. Parr, of Louisville, died testate, on December 30th, 1903. The Fidelity Trust Company qualified as executor of his will. By the eleventh clause of that instrument the testator devised the residuum of his estate to trustees, who were directed to use it in providing and establishing, in the city of Louisville, or county of Jefferson, Kentucky, a permanent home for old and destitute women residents and citizens of the State of Kentucky, to be known as "Parr's Rest," "where feeble old women, who have no estate of their own, and who are unable to provide for themselves the necessaries of life, might find

shelter and rest in their declining years.'' The trustees were directed to form a corporation, to be known as ''Parr's Rest,'' for the administration of the trust; and, that has been done.

Owing to a contest over the probate of the will, the executor and trustee refrained from turning over the residuary estate to the Board of Managers of Parr's Rest, pending the contest.

However, on August 23rd, 1904, the Fidelity Trust Company, as executor and trustee under the will, entered into a written contract with the Board of Managers of Parr's Rest, which recited that in consideration of the executor's delivering to the trustees of Parr's Rest certain specified stocks and bonds of the aggregate value of $194,303.68, the Board of Managers of Parr's Rest appointed the Fidelity Trust Company its agent to hold said personal property for said Board of Managers until the 1st day of February, 1906, at which time the agency therein created should expire and said Board of Managers should have the right to receive from its said agent the property above described.

The contract further provided, however, that should a contest be filed against the probate of the will of Daniel G. Parr, the agency should continue until the contest should be finally settled, or in case no appeal should be taken the agency should continue until the expiration of the time in which an appeal could be taken; and, should no contest be instituted prior to February 1st., 1906, the agency should then cease and the personalty above described should be turned over to the Board of Managers of Parr's Rest.

The Home known as Parr's Rest was established and opened for inmates in December, 1909.

After Mr. Parr's death, the State Revenue Agent instituted proceedings to recover taxes upon personalty, which it was claimed Daniel G. Parr had failed to return for taxation, for the years 1900 to 1904, both included; and that suit was settled by the payment of $2,701.20 by the executor.

Of these five suits before us, which have been consolidated and heard as one case, one was brought by the Commonwealth against the Fidelity Trust Company, as executor and trustee of Daniel G. Parr's estate, and the others are against Parr's Rest and the Fidelity Trust

Company, trustee and agent of Parr's Rest; all being for the purpose of assessing for taxation for the years 1904 to 1909, inclusive, the residuum of the estate which was held during those years by the Fidelity Trust Company under the contract of agency, above recited.

The cases were dismissed by the county court; and, upon an appeal to the circuit court, and a trial *de novo* in that court, the chancellor held the property was exempt from taxation, and dismissed the proceedings in that court. From that judgment the Commonwealth appeals.

The exemption was granted under section 170 of the Constitution, which, among other things, provides that, "institutions of purely public charity" shall be exempt from taxation. See also Kentucky Statutes, section 4026.

That Parr's Rest is an institution of purely public charity, within the meaning of section 170 of the Constitution, there can be no question. 6 Cyc., 900; Ford v. Ford, 91 Ky., 575; Zable v. Louisville Baptist Orphans' Home, 92 Ky., 89, 13 L. R. A., 668; Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky., 487, 40 L. R. A., 119; Commonwealth v. Thomas, Trustee, 119 Ky., 208; Widows' and Orphans' Home v. Commonwealth, 126 Ky., 386, 16 L. R. A. (N. S.), 829; City of Dayton v. Trustees of Speer's Hospital, 165 Ky., 60; Neptune Fire Engine & Hose Co. v. Board of Education, 166 Ky., 1.

In the case last above cited, we said:

"Mr. Justice Gray, when on the Supreme Bench of Massachusetts, defined a charity in its legal sense as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. Jackson v. Phillips, 14 Allen, 555. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature. Jackson v. Phillips, *supra*.

"While this last definition is perhaps not as concise as could be desired, it is nevertheless both clear and comprehensive, and is adopted by Perry in his work on Trusts as the most satisfactory definition of a charitable

use; and, it has lately been approved by the Supreme Court of Pennsylvania in Fire Insurance Patrol v. Boyd, *supra*, where the distinction between the motive and the purpose of the gift is pointed out, and the purpose declared to be the true test.

"Without confining themselves to any one definition, but looking at the subject in its broadest significance, text-writers have generally classified charitable gifts as follows: (1) gifts for eleemosynary purposes; (2) gifts for educational purposes; (3) gifts for religious purposes; and (4) gifts for public purposes. Bispham's Principles of Equity, sec. 120."

Appellant contends, however, that the legal title to this personalty, aggregating $200,000.00 in value, during the years involved—from 1904 to 1909, inclusive—was vested in the executors of Daniel G. Parr, and that it was not devoted to any charitable purpose until it was actually turned over to the managers of Parr's Rest in December, 1909; that the contract of August 23rd, 1904, was a mere pretext for the purpose of avoiding taxation for the years mentioned, and was of no real efficacy, because both the legal title and the possession of the property were still retained by the Fidelity Trust Company; and, that although it pretended to hold the property, after August 23rd, 1904, as agent for the Managers of Parr's Rest, it really held it as executor or trustee under the will.

We do not, however, so understand the case. The equitable title to this fund was in the Board of Managers of Parr's Rest during those years, and the fact that the statute provided that the appeal to the circuit court to contest the probate of the will by the county court might be brought at any time within five years thereafter, justified the executor, in this case, in retaining possession of the fund until the will was finally established. In no other way could the executor effectually protect itself, or the estate in its hands.

In our opinion, the case is not affected by the contract of August 23rd, 1904. It was immaterial whether the Fidelity Trust Company held this fund as trustee under the will of Daniel G. Parr, or as the agent of the Board of Managers of Parr's Rest, since, in either case, it held the property for the use and benefit of the Board of Managers of Parr's Rest; and, under section 170 of the Constitution, its property was exempt from taxation.

This question was set at rest by the opinion of this court in Norton Exrs. v. City of Louisville, 118 Ky., 836. In that case, the testator devised the residuum of his estate for the establishment of a trust to be known as "Norton Trust Fund," the trustees thereof to be the same as the executors named in the will. The duration of said trust fund was fixed at five years from the date of the testator's death, he expressing the hope that during that period the trustees would be able to dispose of all of the testator's real estate; and, when that end should be accomplished and his estate reduced to cash, the trust fund should be terminated by the trustees and the proceeds of the fund paid to the Louisville Baptist Orphans' Home. The city of Louisville attempted to tax the "Norton Trust Fund" while it was in the hands of the trustees, and before it was paid over to the Baptist Orphans' Home.

In asserting the exemption of the fund from taxation, this court said:

"While the beneficiary of the trust fund is not given the immediate care and control of it, it is the equitable owner of it, and it could not rightfully be diverted to any uses or purposes other than those designated by the testator. If the condition required it, the beneficiary could, by appropriate proceedings, rescue the fund from any misappropriation of it. It is the owner of the fund, though temporarily controlled by others. While Norton and Barr are designated as trustees under the will, still they are the trustees for the beneficial owner. They are accountable to it for the management of the property and the execution of the trust. The practical effect of the provision of the will under consideration is that the fund is given to the orphans' home, but it is to be managed for it for the specified time by the trustees named by the testator. If the income from the property or from its proceeds were to go to another during the five years, then it would be very clear that the property or fund should be taxed during that period. When one is the equitable owner of property and is entitled to the income from it, he has the enjoyment of every benefit that could come to any one who might own the property. To hold that the property should be taxed because it is controlled by other than the trustees of the orphans' home for a specified period is giving effect to the shadow, and not the substance, of things.  *  *  *

"In the case at bar it is admitted that the entire proceeds of the property sought to be taxed, and the income arising therefrom, will go to the orphans' home under the will. In our opinion, the property is exempt from taxation."

We consider the Norton case, *supra,* as concluding the case before us.

Judgment affirmed.