## Vogt, et al., Trustees v. City of Louisville, et al.

(Decided January 10, 1917.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Taxation—Public Charity—What Constitutes.—A purely public charity in the meaning of section 170 of the constitution is such

an institution as is maintained, without cost to the beneficiaries, (1) for eleemosynary purposes; (2) for educational purposes; (3) for religious purposes; and (4) for public purposes.

2. Taxation—Public Charity—What Constitutes.—A building owned and used as a home and for the exclusive purposes of a Commandery of Knights Templar, which is maintained by funds derived from fees and assessments of members of the Commandery, and substantially the only charity the Commandery dispenses is what it does not need to expend in maintaining its home and furthering the fraternal spirit and aims of the order, cannot be regarded as a purely public charity within the meaning of section 170 of the constitution, and is, therefore, not exempt from taxation under that section.

J. S. LUSCHER, ROBT. C. KINKEAD and EUGENE R. ATTKISSON for appellants.

PENDLETON BECKLEY and GEO. CARY TABB for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

The question involved in this case is whether the real estate in the city of Louisville owned by the De Molay Commandery No. 12, Knights Templar, the title to which is held by appellants as its trustees, is subject to taxation. The action was brought by appellants to obtain a decision by the court of that question, and an injunction therein sought to prevent appellees from assessing the property for taxation, and also to prevent their collecting any taxes thereon. After the filing of appellees' answer proof was taken on the issues made by the pleadings. On the hearing the court below refused the relief asked by appellants and dismissed their petition. From the judgment entered in conformity to that ruling the latter have appealed.

The property consists of a lot and three-story stone front building, the lot fronting 62½ feet on the south side of Broadway, between Second and Third streets, and running back 260 feet to an alley. The entrance hall on the first floor of the building divides the front part of it into two large parlors, a library and committee rooms. The rear is occupied by the drill hall and kitchen. The drill hall is at times rented out, and since the institution of this action a lease was made of it to a Christian Science congregation as a place of worship on Sundays, for one year, at a rental of $75.00 per month. The second floor of the building is used more particularly

for the purposes of the commandery, such as the conferring of degrees, conducting the work of the commandery, etc.  The third floor contains lockers owned by the members of the commandery, in which they keep their uniforms and any other personal property they may wish to put there.  The estimated value of this property is $47,000.00.

The sole ground upon which the exemption from taxation is asked by appellants is that De Molay Commandery is an institution of "purely public charity," and by reason thereof, under section 170 of the Constitution of the State, not subject to taxation.  The petition does not ask the exemption of a fund, the principal or interest of which is devoted to charitable uses, but only its real estate, already described, which was purchased and is maintained for the use and benefit of the members of De Molay Commandery, or rather, as alleged in the petition, "for a home for the said De Molay Commandery."

The provision of the Constitution under which the exemption is here claimed is found in section 170 thereof:

"There shall be exempt from taxation . . . . institutions of purely public charity. . . . ."

It is well to bear in mind at the outset that exemptions from taxation must be strictly construed, and one claiming an exemption must show it to be clearly within the spirit and intent of the exception.  City of Middlesboro v. New South Brewing Co., 108 Ky. 351; City of Newport v. Masonic Temple Ass'n, 108 Ky. 333.

One of the best statements of the rule referred to is thus given in Frederick Elect. Lt. & Power Co. v. Frederick City, 84 Md. 599:

"The right of taxation is never presumed to be relinquished, and, before any party can rightly claim exemption from the common burden, it is incumbent upon the party to show affirmatively that the exemption claimed is authorized by law.  If there be a doubt upon the subject, that doubt must be resolved in favor of the state, and it is only where the exemption is shown to be granted in terms clear and unequivocal that the right of exemption can be maintained."

Is De Molay Commandery an institution of "purely public charity?"  Its property is used and enjoyed only by its own members.  No part of its building is

given over to the free use of widows or orphans as a home, nor is it even an asylum for the indigent of its own order. The only occupancy of its building by persons outside of the order is confined to the occasional occupancy of its drill room for such use as it receives compensation. The use made of the building by its members is for the benefit of the association and their individual comfort and social profit. The total income of the De Molay Commandery for the past year appears to have been $4,900.00, $300.00 of which it spent in charity, that is, distributed for the relief of the sick or indigent among its own members. It is true the commandery has occasionally made charitable contributions outside of the state, for its books show that in 1889 it donated $88.00 to yellow fever sufferers in Florida; in 1901, $100.00 to Galveston, Texas, flood sufferers; and in 1907, $107.00 to sufferers from the earthquake and fires of San Francisco, California. But all of the contributions to charity mentioned, though highly commendable, are not sufficient to demonstrate that the commandery is an institution of *purely public charity.* It also expends considerable sums each year in furtherance of the fraternal spirit and aims of the order, because such expenditures are found necessary to enlist the interest and obtain the co-operation of the members in its work.

In brief, it appears from the record before us that De Molay Commandery is essentially a fraternal and social organization and that the charity it dispenses is only an incident to the work it performs. Its charter, made a part of the record, shows it to be a corporation created by an act of the Legislature of Kentucky, with power to acquire and own property, real and personal, to borrow and loan money; but it is nowhere recited therein that it is a charitable organization. We do not mean to be understood as saying that De Molay Commandery is a business corporation, created or maintained for gain or profit. On the contrary, its mission is to benefit mankind, and to that end its work is in large measure charitable. But what we do mean to say is aptly expressed in Bangor v. Lodge, 73 Me. 428, as follows:

"It is apparent that the defendant corporation cannot be regarded as a purely public charitable institution, because it wants the essential elements of a public

charity. It has other objects than charity. Whatever its ultimate purposes, they are other than charitable. Its funds are derived, not from devises or gifts as in case of a public charity, but from fees and the assessment of its members. The funds so obtained are to be distributed among the poor and needy members from whom they were collected, and among their wives and children. It is an association for the mutual benefit of its members, and not a charitable institution, within the meaning of the statute.''

In City of Newport v. Masonic Temple Assoc., 108 Ky. 333, it was held that property held exclusively by a Masonic Lodge is not a "purely public charity," the opinion quoting with approval the excerpt from Bangor v. Lodge, *supra*. To the same effect are the following cases decided in other jurisdictions: Mason v. Perry, (R. I.) 48 Atl. 671; Fitterer v. Crawford, Collector (Mo.), 57 S. W. 532; Lodge v. Hayslip, 23 Ohio St. 144; Babb v. Reed, 28 Am. Dec. 650; State v. McGrath, 95 Mo. 193; State v. Central St. Louis Masonic Hall Ass'n, 14 Mo. App. 596.

The following cases cited in the brief of appellants' counsel, namely, Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386; Commonwealth v. Young Men's Christian Association, 116 Ky. 711; German Gymnastic Association v. Commonwealth, 117 Ky. 958, and Commonwealth v. Board of Education Methodist Episcopal Church, 166 Ky. 610, do not support their claim to the exemption here asserted. In the case first mentioned, the Odd Fellows Widows' and Orphans' Home at Lexington was held to be exempt from taxation upon the ground that it was a corporation whose sole object was to provide a suitable home and maintenance for the destitute widows and orphans of its bounty, which made the corporation and its work an institution of purely public charity in the meaning of section 170 of the Constitution. In the second case, the Young Men's Christian Association was allowed the exemption from taxation claimed, on three grounds: First, that it was a religious institution; second, an educational institution; and third, that it was a purely public charity. In the opinion it is said:

"We have no hesitancy in declaring that appellees, in the use of their buildings as places actually used for religious worship, are exempted from taxation thereon,

as being clearly within the letter and intent of section 170 of our Constitution. . . . . Aside from that part of the religious work done by appellees, which may be denominated devotional, they undertake to bring within the religious, moral and intellectual influences of the institution all young men, and, for that matter, old men, too, for the betterment, improvement, and protection from evil influences and consequences. It is not so much the giving of alms, or in aid of the mendicant. The endeavor is to reach the boys and young men before they need alms, and before they are reduced to beggary, and, by training the minds, and teaching them how to use and preserve their bodies, and how to live useful and honest lives, to save them from the lower grades of misfortune, so familiar in the utter helplessness of abject poverty and disease and want."

In the third case, the German Gymnastic Association was relieved from taxation upon the ground that it was an educational institution. In the last case mentioned, an office building owned by the Board of Education of the Methodist Episcopal Church and located in the city of Louisville was held to be exempt from taxation because the entire income therefrom was used in the support and maintenance of a school owned and conducted by the board in Barbourville, Kentucky, the latter institution being one solely devoted to the purposes of education.

A companion case in principle to the four last considered is Commonwealth, By, et al. v. Parr's Exor., et al., 167 Ky. 46. In that case Daniel G. Parr, of Louisville, by will devised the residuum of his estate to trustees, who were directed to use it in providing and maintaining in the city of Louisville a permanent home for old and destitute women, residents of the State of Kentucky, to be known as "Parr's Rest," "where feeble old women, who have no estate of their own, and who are unable to provide for themselves the necessaries of life, might find shelter and rest in their declining years." It was held that the home known as "Parr's Rest," as well as the money and other personal property devoted to its maintenance, was exempt from taxation, upon the ground that the charity was of a purely public character, which section 170 of the Constitution declares shall not be subject to taxation. In the opinion it is said:

"That Parr's Rest is an institution of purely public charity, within the meaning of section 170 of the Constitution, there can be no question. 6 Cyc. 900; Ford v. Ford, 91 Ky. 575; Zable v. Louisville Baptist Orphans' Home, 92 Ky. 89, 13 L. R. A. 669; Trustees of Kentucky Female Orphan School v. City of Louisville, 100 Ky. 487, 40 L. R. A. 119; Commonwealth v. Thomas' Trustee, 119 Ky. 208; Widows' and Orphans' Home v. Commonwealth, 126 Ky. 386, 16 L. R. A. (N. S.) 829; City of Dayton v. Trustees of Speer's Hospital, 165 Ky. 60; Neptune Fire Engine & Hose Co. v. Board of Education, 166 Ky. 1.

In the case last above cited, we said:

'Mr. Justice Gray, when on the Supreme Bench of Massachusetts, defined a charity in its legal sense as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. Jackson v. Phillips, 14 Allen, 555. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature.' Jackson v. Phillips, *supra*.

While this last definition is perhaps not as concise as could be desired, it is nevertheless both clear and comprehensive, and is adopted by Perry in his work on Trusts as the most satisfactory definition of a charitable use; and, it has lately been approved by the Supreme Court of Pennsylvania in Fire Insurance Patrol v. Boyd, *supra*, where the distinction between the motive and the purpose of the gift is pointed out, and the purpose declared to be the true test.

Without confining themselves to any one definition, but looking at the subject in its broadest significance, text writers have generally classified charitable gifts as follows: (1) gifts for eleemosynary purposes; (2) gifts for educational purposes; (3) gifts for religious purposes; and (4) gifts for public purposes. Bisphman's Principles of Equity, Sec. 120."

It is manifest that neither De Molay Commandery nor its building or other property here claimed to be

exempt from taxation can be classed as an institution of purely public charity in the meaning of any of the above definitions of such a charity, or in the meaning of section 170 of the Constitution. On the contrary, like the building of the Masonic Lodge which, in City of Newport v. Masonic Temple Ass'n, *supra,* was held to be subject to taxation, its building is maintained solely as a home for the commandery, and substantially the only charity it dispenses is what it does not need to expend in maintaining its home. It is not, therefore, entitled to the exemption claimed, and as the judgment of the circuit court was to this effect, it must be and is affirmed.