### STATE v. SETTEGAST et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 3, 1920. Rehearing Denied Jan. 13, 1921.)

1. **Taxation ⬯191 — Legislature may exempt institutions of public charity.**

Under Const. art. 8, § 2, as amended January 7, 1907, the Legislature may exempt from taxation institutions of purely public charity, and not merely the buildings used and owned by such institutions.

2. **Taxation ⬯241(2) — Trustees of gift for hospital purpose held an "institution of purely public charity."**

Trustees to whom property was bequeathed for the purpose of maintaining a public charity hospital for the gratuitous relief of those in sickness and distress, who were residents of a specified county, constituted an "institution of purely public charity" as respected exemption from taxation where no private or pecuniary return was reserved to the giver or any other particular person, and the entire benefits were to go to the public generally.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Charity.]

3. **Taxation ⬯241(2)—Hospital organization held exempt notwithstanding lack of membership; "institution of purely public charity."**

Trustees under a will who had organized themselves into a board and held property bequeathed to them for the establishment and maintenance of a hospital constituted an "institution of purely public charity" exempt from

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

taxation, though the board had no members in the sense that lodges, mutual aid societies, and other organizations have, as Rev. St. 1911, art. 7507, § 6, does not exclude other institutions than those particularly defined therein.

**4. Taxation ⬤➾241(2)—Trustees of fund for hospital purposes exempt from taxation though hospital not yet established.**

Trustees to whom property was bequeathed for the purpose of maintaining a public charity hospital were exempt from taxation on such property as an institution of purely public charity, though they were accumulating a fund with which to build and operate a hospital and converting nonrevenue-producing property into income-bearing assets, and did not yet have a hospital in operation; the property being permanently and legally dedicated to the specific charity by the irrevocable terms of the will.

**5. Taxation ⬤➾193—Exemption of charitable institutions not unconstitutional.**

Rev. St. 1911, art. 7507, exempting institutions of purely public charity from taxation, is not unconstitutional.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by the State against J. J. Settegast, Jr., and others, constituting the Hermann Hospital Estate. From a judgment for defendants, the State appeals. Affirmed.

J. S. Bracewell, Fred R. Switzer, and E. T. Branch, all of Houston, for the State.

J. W. Lockett, of Houston, for appellees.

GRAVES, J. There is but a single question presented by this appeal, and that is: Did the Hermann Hospital Estate, at the time the taxes sued for were sought to be collected, constitute an institution of purely public charity within the meaning of our constitutional and statutory provisions on that subject? If it did, as the trial court held, the property involved was exempt, and judgment was properly rendered below for the Hospital Estate; if it did not, the state should have been permitted a recovery.

The agreed facts, in so far as deemed material, were these:

In November, 1917, the state brought the suit against the trustees of George H. Hermann's estate to recover the sum of $287.75 as state and county taxes for the years 1915 and 1916—which amount included interest, costs, and penalties, and was admitted to be due if the property it was levied against was not exempt—on six improved lots in the city of Houston having six cottages located thereon, and in the aggregate producing about $140 per month rent.

Mr. Hermann died October 21, 1914, leaving a will that was admitted to probate January 9, 1915, on which latter date the independent executors named in the will qualified, and administration of the estate in the probate court was at once closed. Taxes for 1914 had been paid on the lots, but not for 1915 and 1916.

By the terms of the will the property in controversy, along with other property, the whole being of the approximate value of $2,000,000, was bequeathed to the trustees originally named and their successors in office to be held in trust, managed, and operated by them for the purpose of maintaining a public charity hospital in the city of Houston to be known as the "Hermann Hospital"; the trustees were authorized and directed to keep the principal derived from such property well and securely invested in either real property or notes, bonds, or other good securities, and to use the rents, revenues, and income solely for the maintenance, support, sustenance, and operation of the hospital; the indigent, sick and infirm of the city of Houston were to be taken care of in this hospital in preference to any others, but, if there should at any time be sufficient accommodations for others, then the indigent, sick, and infirm of Harris county were to be accommodated. The trustees were further empowered to appoint and fill out the required number of their body, supply any vacancy that might occur on the board, make rules and regulations for the transaction of their business and the management of the hospital, and were to serve without compensation for their personal services, but might employ clerical assistance at reasonable compensation.

At the time of this suit the hospital thus provided for was not in actual operation, but the trustees had made plans for and proposed to construct the building for it, and, as soon as it was in operation, to accept patients in all respects as directed in the will. They had organized themselves into a board and were operating without personal compensation under the name of "Hermann Hospital Estate." This organization was without capital stock, paid no dividends, nor did any person receive any private profit from the hospital fund.

Mr. Hermann owed large sums of money at the date of his death, which his trustees had since paid, and at the time this cause was tried they were accumulating a fund with which to build and operate the hospital, and it was then their belief that within another year or so the net income would reach the sum of $300 per day, the amount estimated by them to be necessary for the operation of the first unit of a hospital with 100 patients.

The trustees were further using every effort to convert the nonrevenue-producing property into income-bearing assets, and, unless required to pay the taxes sought, the rents yielded by the lots here involved, as well as all other income, will be applied

⬤➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

solely to the support, operation, and maintenance of this hospital, which will be a going concern in accord with its donor's directions just as soon as the income and other circumstances will permit.

With the case so grounded, the state contends that, because the hospital was not in 1915 and 1916 actively dispensing charity, neither it nor its board of trustees in their official capacity—whatever their then pending use of or future purpose toward its property and assets—came within the class of institutions entitled to exemptions from taxation.

With this position we are unable to agree, but think the trial court correctly held the "Hermann Hospital Estate" to be an institution of purely public charity within the meaning of our fundamental and statutory law, and therefore exempt from state taxation. The provisions immediately applicable are those contained in section 2 of article 8 of the Constitution as amended January 7, 1907, and in section 6 of article 7507 of our Revised Statutes. Both of these are amendatory of pre-existing pronouncements, the former having been carried under a like numbered article and section when the Constitution was adopted in 1876, and the latter as article 5065 of the Revised Statutes of 1895.

[1] While it is not deemed necessary to copy at length the originals or amendments of either Constitution or statute here, the full texts of each are referred to. See Vernon's Complete Texas Statutes of 1920, pp. xxxiv and 1298; also Revised Statutes of 1895, art. 5065. An examination discloses that, as formerly appearing, the exemption permitted by the Constitution, in so far as applicable here, was of "all buildings used exclusively and owned by persons, or associations of persons, for school purposes" (and the necessary furniture of all schools), and institutions of purely public charity"; while the form of the statute freeing property from taxation under it was this:

"6. All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions, not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustaining such institutions."

It thus appears that, since the clause "and institutions of purely public charity," as so used at that time in the Constitution, immediately followed that allowing exemption of "all buildings," etc., the Legislature expressly limited the concession to the buildings owned by such institutions, together with the necessary grounds, etc. And so our Supreme Court, in the case of Morris v. Lone Star Chapter, etc., 68 Tex. 698, 5 S. W. 519, decided in 1887, while the provisions as thus worded were in force, though saying that the word "institution" properly means the association organized or established for some specific purpose, determined that, as there applied, it signified the "buildings used exclusively and owned by institutions of purely public charity."

But since that holding, as already stated, and possibly as a result of it, the forms of both Constitution and statute have been changed, a number of new provisions now appearing between the terms "all buildings" and "institutions of purely public charity" in the amended section 2 of article 8, leaving the two clauses widely separated, while the new statute attempts an elaborate definition of what is meant by "an institution of purely public charity," the context of which clearly indicates that the Legislature now construes the term "institution" to indicate the organization or entity that owns the buildings, or property, rather than the property itself; for instance, reading the first line of the article, buildings do not belong to property, nor, considering the next succeeding reference, could property appropriate funds, but the evident meaning is that the association, consisting of persons' natural or artificial that dispense the charity, both owns the property and appropriates the moneys and credits solely to sustain the establishment. See amended article 8, § 2, and Revised Statutes, art. 7507, supra.

Without calling in question the court's holding in the Morris Case as the matter then stood, it seems to us that the meaning of the applicable portion of this amended section 2, art. 8, is the same as if it read simply:

"The Legislature may, by general laws, exempt from taxation institutions of purely public charity."

Such is the effect of the holding of the Ft. Worth Court of Civil Appeals in the case of Scott v. All Saints Hospital, 203 S. W. 146.

Under this construction the grant of power to the lawmaking body with reference to such establishments is a very broad and general one, much more so than that in the same context relating to churches; the only limitation as to the former being that the Legislature must proceed by general law, and that they must be of that character denominated in the phrase "of purely public charity," while with reference to churches it is specifically required that they be actual places of worship.

These views, under constitutional provisions in no material respect different from our own, are fully sustained in the Kentucky case of Trustees, etc., v. City of Louisville, 100 Ky. 470, 36 S. W. 921, 40 L. R. A. 119.

[2] That the innate character of this hospital estate is also such as to bring it within the protection afforded is, we think, equally apparent. It was established for the alleviation of the public burdens, the advancement of the public good, the gratuitous

relief of those in sickness and distress without other particularization than that they be residents of Harris county; no private or pecuniary return was reserved either to the giver or to any other particular person, but the entire benefits were to go to the public generally. Surely this constituted it an institution of purely public charity. Scott v. All Saints Hospital, 203 S. W. 146, and authorities therein cited; Episcopal Academy v. Philadelphia, 150 Pa. 565, 26 Atl. 55; 11 Corpus Juris, 303; Fire Ins. Patrol v. Boyd (Pa. Sup. Ct.) 1 L. R. A. 417, footnotes.

[3] Neither, we think, does the fact that it has no membership, in the sense that certain lodges, mutual aid societies, and other organizations do, which may also fill the statutory requirements, make it any the less so. It is not our understanding that the Texas statute undertakes to provide that no other institution than the particular sort therein defined is or can be one of purely public charity, because, by common knowledge as well as by judicial history, other kinds had long been recognized as such, but that in this respect the legislative purpose was to remove any pre-existing doubt as to the status of the institution specifically described, without attempting to say that others having the above-mentioned essential elements may not also be of that character.

[4] Nor does the further fact that those named as beneficiaries in this instance have not yet actually received the free hospital service, in our opinion, make any substantial difference; this for the reason that this institution has in fact been created and endowed with all the incidents heretofore enumerated, and, in the language of our statute, its "funds, property and assets are placed and bound" by the irrevocable terms of Mr. Hermann's will, and therefore so permanently and legally dedicated to the specific charity named that they can never be used for any other purpose. It is accordingly a misnomer to say that it is not even now a going concern, because its trustees have already taken over its property and begun so handling and managing it as to enable them to begin furnishing its ultimate free service to the indigent and sick at the earliest practicable time. The exclusively public character of this property was given it in fact and law by the taking effect of Mr. Hermann's will, and from and after that date no power was lodged anywhere to change it. For analogous cases see Norton's Executors v. City of Louisville, 118 Ky. 836, 82 S. W. 621; New England Hospital for Women and Children v. City of Boston, 113 Mass. 518; Williston Seminary v. County Commissioners, 147 Mass. 427, 18 N. E. 210; Ellsworth College v. Emmet County, 136 Iowa, 52, 135 N. W. 594, 42 L. R. A. (N. S.) 530; Commonwealth v. Parr's Executor, 167 Ky. 46, 179 S. W. 1048. And if, as these conclusions portend, the exemption is to the association so holding the property as an entity, it follows by the very letter of the statute that its endowment funds and other assets of whatever character or form, being parts of it, are included, if the rents and profits and all moneys and credits are appropriated by such institutions solely to sustain it, etc.

[5] The appellant's further contention that the statute involved is unconstitutional had heretofore been passed upon by this court, and its validity upheld. See opinion in City of Houston, Appellant, v. Scottish Rite Benevolent Association, Appellee, No. 7218 in this court, filed June 3, 1916, but not yet officially reported. No reason occurs for now changing that holding, and it is adhered to. Since what has been said disposes of all questions presented, a seriatim discussion of the different assignments of error has not been deemed necessary. All of them have been carefully considered, however, but under the conviction that none point out reversible error, all are overruled, and the judgment is affirmed.

Affirmed.