### HARTFORD LIFE INS. CO. v. PATTERSON. (No. 8521.)

(Court of Civil Appeals of Texas. Dallas. April 2, 1921. Rehearing Denied June 11, 1921.)

1. **Insurance** ⊚⟿84(4) — **Insurer's agreement with agent as to renewal held not to supplant prior agreement.**

Insurance company's agreement with agent providing for continuous renewal commissions upon policies thereafter written, without any limitation with reference to agent's voluntarily ending his service or any other limitation, *held* not to supplant previous agreement providing for continuance to renewals so long as agent did not voluntarily sever his connections with company; there being no such inconsistency between the two agreements as to preclude agent's recovery on renewals upon policies written prior to the execution of the subsequent agreement.

2. **Election of remedies** ⊚⟿7(1)—**Institution of proceeding not a conclusive election.**

The mere institution of a proceeding is not such a conclusive election as will prevent the plaintiff from abandoning it and pursuing an inconsistent remedy.

3. **Pleading** ⊚⟿248(4) — **Plaintiff could amend petition by asserting remedy on contract inconsistent with that first pleaded, that contract had been repudiated.**

Where insurance company being sued by agent for renewal commissions sought to show that cause of action alleged in original petition was a suit for damages for the accepted termination of the contract repudiated by the company, and then set up in bar the plea of limitation, plaintiff could amend the petition so as to plead a cause of action upon theory that contract was a continuing one and had not terminated, notwithstanding amendment asserted an inconsistent remedy.

4. **Election of remedies** ⊚⟿12—**One does not have two remedies to elect between where there is valid defense to one of them.**

A party does not have two remedies between which he must elect, where there is a valid defense to one of them, as where the remedy first sought is defeated by laches or statute of limitations.

5. **Evidence** ⊚⟿271(19) — **Letters written by plaintiff not admissible in his behalf.**

In insurance agent's action against insurance company for renewal commissions in which

the company denied the existence of the contract entitling agent thereto, letters written by the agent abounding in argumentative statements *held* inadmissible, without qualification.

**6. Appeal and error** ⟐⟐**1170(7) — Erroneous admission of evidence harmless in view of other evidence.**

In an agent's action against an insurance company for renewal commissions in which the company denied existence of the alleged contract entitling agent thereto, the erroneous admission, on agent's behalf, of letters written by him tending to prove existence of contract, *held* harmless, where the evidence was conclusive in favor of agent to such an extent that the Court of Civil Appeals could not have permitted a finding contrary to that made by the jury to stand, since in such case the court could not say that the error caused the rendition of an improper judgment, under Courts of Civil Appeals Rules No. 62a (149 S. W. x).

*Error from District Court, Dallas County;* E. B. Muse, Judge.

Action by W. H. Patterson against the Hartford Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Locke & Locke, of Dallas, for plaintiff in error.

Cockrill, Gray, McBride & O'Donnell, of Dallas, for defendant in error.

HAMILTON, J. On April 4, 1893, plaintiff in error, a life insurance company, contracted with defendant in error engaging him as its general agent in Texas. By subsequent amendments and substitutions this contract was changed as to commissions and renewals to be paid to Patterson and a partner who had become associated with him after the date of the first contract. The partner was eliminated before this controversy arose, and the agreements may be and will be stated as existent only between Hartford Life Insurance Company and Patterson. By a new agreement made between the parties on June 1, 1896, Patterson's initial commissions were increased and the period through which he should receive renewal commissions on all policies written through his agencies was fixed to cover the first 10 years of each policy. Other provisions of the contract not contained in previous agreements are not material and accordingly need not be mentioned.

The agreement of June 1, 1896, contained the following provision relating to the payment of renewals to Patterson:

"Two dollars per annum out of each succeeding annual payment for nine years on each such policy, provided said payments are made to said company (the date of termination of this contract by limitation fixed in line 79 in no wise discontinuing this compensation, in respect of business done before said date), it being un- derstood and agreed that in case said party of the second part leaves the service of said company, then all interests in this contract and in compensation for business furnished thereunder shall absolutely cease and determine."

On December 30, 1897, the contract dated June 1, 1896, was expressly amended by still another agreement in the following respect material to this controversy. For the above-copied section relating to payment of renewals was substituted this section:

"The renewal commissions alleged by said contract upon payments made after the first year of each policy upon business hereafter written shall continue to be paid to said parties of the second part during the continuance of the respective policies, subject to all other conditions of said contract."

It seems that about the time of expiration of the above-mentioned 1896 contract by express limitation contained in it, a question arose as to Patterson's right to continuous renewals on business obtained previous to December 30, 1897. This was in 1906. About this time Patterson asserted his right to continuous renewals upon business written prior to December 30, 1897. Patterson based his right to such continuous renewals upon a contract evidenced by a letter from the secretary of the company, written either late in 1906 or early in 1907, amending the renewal provision of the contract of June 1, 1896, so as to provide for continuous renewals unless and until Patterson voluntarily quit the service of the company. The company did not expressly deny nor admit this claim. This letter Patterson claimed was written either in the latter part of 1896 or the first part of 1897. The evidence shows that the letter was written and misplaced or lost, before Patterson made his claim based upon it in 1906. No definite disposition of Patterson's asserted right was made and the incident passed. Patterson continued to collect the renewals upon all business produced prior to December 30, 1897, until the last of 1913 or the first of 1914, when he became connected with the Missouri State Life Insurance Company as a result of some character of consolidation or agreement whereby the Missouri State Life Insurance Company took over all of a certain kind of plaintiff in error's business. The plaintiff in error, in consonance with the terms of a mutual understanding to that effect, after this change collected the premiums on all business previously produced through defendant in error's office. Thereafter remittances of renewals accruing on all policies postdating December 30, 1897, were made to defendant in error by plaintiff in error, but none were made to him on policies antedating December 30, 1897. Prior to 1914 Patterson had collected the premiums on all the poli-

cies written in his territory and had remitted to the company the premiums after deducting renewals upon all of them, those for policies written before as well as after December 30, 1897. The company had acquiesced in this with knowledge that Patterson was basing his right to retain renewals for business produced prior to December 30, 1897, upon the lost letter. This letter, as we have stated, contained the provision that Patterson was to have continuous renewals upon all premiums paid for policies from the beginning of his agency in 1893, unless he "voluntarily quit the service of the, company."

The letter was written by the secretary of the company, and its contents were divulged to other officers of the company; but no copy of it was carried in the regular files of the company. According to Patterson's testimony, this was to keep the contract secret, because it was more favorable to Patterson than other agency contracts were to other agents. It does not appear that the existence of the letter was known to the officers of the company who participated in the agreement of December 30, 1897. Instead, that contract, it seems, was made with officers of the company who knew nothing of the letter or the agreement evidenced by it. The secretary of the company who wrote the letter was dead when Patterson in 1906 made his claim to continuous renewals by virtue of it.

The contention in the case is as to the right of Patterson to collect continuous renewals upon policies written prior to December 30, 1897. His contention is that the letter gave him the right to such renewals. The plaintiff in error, on the contrary, very vigorously argues that the amendment of December 30, 1897, supersedes all previous agreements as to renewals, and provides for no continuous renewals except upon business thereafter written, as stated in section two of that amendment.

The case was tried below before the court and a jury. The only question submitted to the jury was whether or not the company's secretary wrote the letter in the year of 1896 or in the first part of 1897, as claimed by Patterson. This question was determined by the jury's finding that such letter was written, and judgment was rendered for defendant in error.

### Opinion.

[1] Plaintiff in error presents most thoroughly the position that the amendment of December 30, 1897, having specifically provided for continuous renewals only on business thereafter written, all previous understandings inconsistent with it were displaced by it, and that the letter relied upon by Patterson, containing an inconsistent stipulation for renewals, was entirely eliminated and canceled by the act of entering the agreement of December 30, 1897. In the view that

the letter affords no basis of recovery because it was supplanted by the last amendment we do not concur. The soundness of the conclusions to which the able and cogent argument of counsel leads from the premises laid down we do not undertake to question. But we do not think the hypothesis from which they proceed is sufficiently related to the facts of this case to allow the propositions for which they contend to control. We cannot agree that the provision of the 1897 agreement to the effect that Patterson should receive continuous renewals on business thereafter written necessarily precludes, in view of all the evidence and circumstances of the case, his collection; by virtue of the letter, of continuous renewals upon business theretofore written.

The agreement established by the letter provided for continuous renewals so long as Patterson did not voluntarily sever his relations with the company. The 1897 agreement provided for continuous renewals upon policies thereafter written without any such limitation with reference to his voluntarily ending his services or any other limitation. We think this difference is insufficient to establish such inconsistency between the two agreements as to render the existence of that evidenced by the letter incompatible with the other and preclude its sustaining defendant in error's right to renewals upon policies written previous to December 30, 1897. This is especially so in view of the construction given the two instruments together by the company as well as by defendant in error, as is to be implied from their continuous acquiescence in the collection of the renewals for many years upon the theory that the contract expressed by the letter authorized it and that nothing else did. The provisions of the letter qualified defendant in error's right to continuous renewals by requiring that he should not voluntarily quit the service of the company. His right to renewals on policies written prior to December 30, 1897, was limited by this provision. The agreement dated December 30, 1897, removed this limitation as to policies written subsequent to that date and provided unconditionally that Patterson should receive continuous renewals upon policies thereafter written. This agreement expressly stated that it should apply to renewals only upon future business. It gave Patterson an added advantage as to such business, but left him bound as to previously written policies by the condition that he could receive his renewals from them only under the provisional stipulation that he should not voluntarily leave the service of the company. The plaintiff in error, for a long period after defendant in error's right to renewals on policies antedating the last contract would have lapsed, if that contract had been intended to cut him off from renew-

als on such policies, continued to collect them. These collections were made with the knowledge of plaintiff in error that they were claimed as authorized by a letter contract made before the 1897 contract and under no other claim. The two agreements not being necessarily inconsistent and incompatible and the parties by their acts and dealings with each other in relation to the subject-matter having applied them both and given them a harmonious construction so as to allow renewals on policies written prior to December 30, 1897, under the one and renewals on policies written after that date under the other, we do not think the provision in the last amendment for continuous renewals "upon business hereafter written" ought necessarily to be held to imply the exclusion of continuous renewals on all other business. Hence the doctrine contained in the maxim, "Expressio unius est exclusio alterius," contended for by plaintiff in error, does not apply under the facts and situation presented by the case.

Plaintiff in error contends, in the second place, that defendant in error had two inconsistent remedial rights to choose between when he instituted suit, which were these: First, that when the company repudiated the contract (if its existence be conceded), Patterson then at once became possessed of the right to accept such repudiation as a termination of the contract and bring an action for damages because of such wrongful termination of the contract. Second, the company having repudiated the contract, Patterson could decline to accept such repudiation as a termination of the contract and could treat it as continuing and bring suit to enforce it at or after its maturity. These two coexisting and inconsistent rights presenting themselves to defendant in error, it is asserted by plaintiff in error, he was compelled to make an election as to under which he would pursue his remedy; that he did make such election by filing his original petition wherein he chose to treat the contract as ended and upon that theory sued for damages, declaring upon a cause of action which arose the moment of the breach; that this cause of action was barred by limitation; and that plaintiff in error specially pleaded limitation. It is asserted that defendant in error perceived the error of his election of remedies when the plea of limitation confronted him, and that he thereupon filed an amended petition seeking to abandon his first choice of remedies and to substitute for it the inconsistent one secondly above named, which course is prohibited by the doctrine of election of remedies.

[2-4] We have examined with care both the original petition and the amended petition. The doctrine of election of remedies appears not to have been extensively treated by Texas

courts, and no decisive rule seems to exist by which all cases in which the question arises can be tested with reference to it. Whether or not inconsistent remedies exist requiring an election, it seems, must be determined on the facts of each case. However, we do not think the inconsistency contended for by plaintiff in error clearly appears between the two pleadings. We do not construe the original petition as in effect containing a positive acceptance of repudiation of the contract and being a suit for damages upon the theory that defendant in error has elected to treat the contract as ended, and unless a conclusive election appeared from the pleadings plaintiff in error could not invoke the rule against defendant in error. Besides, since there is conflict of authority in the application of this doctrine, conceding the original petition and the amended petition to assert inconsistent rights, we choose to follow those authorities which seem to hold that the mere institution of a proceeding is not such a conclusive election as will prevent the plaintiff from abandoning it and pursuing an inconsistent remedy. Lewis v. Powell, 205 S. W. 737; Johnson v. Bank, 198 S. W. 990. It has been held that a suit for damages confirming a contract is a bar to a suit for rescission; but that a suit for rescission may be abandoned and the remedy for damages for breach pursued. Wright v. Chandler, 173 S. W. 1176. "An original complaint will not constitute an irrevocable election precluding plaintiff from filing an amendment asserting an inconsistent remedy." 20 C. J. 35. The fact that plaintiff in error sought to show the cause of action alleged in the original petition was a suit for damages for the accepted termination of the contract repudiated by it and then set up in bar the plea of limitation would authorize an amendment embodying the assertion of an inconsistent remedial right, and the pursuit of a remedy thereunder. Tullos v. Mayfield, 198 S. W. 1073; 20 C. J. 24. "A party does not have two remedies between which he must elect where there is a valid defense to one of them, as where the remedy first sought is defeated by laches, or the statute of limitations, although there are decisions inconsistent with this rule." 20 C. J., supra. These authorities would overcome plaintiff in error's contention, even if it were established or conceded that the amended petition constituted the pursuit of a remedy entirely inconsistent with that sought in the original petition. But, as above stated, we hold that the asserted inconsistency does not in reality exist. The amended petition only more definitely, clearly, and specifically sets out the cause of action pleaded in the first instance. Williams v. Emberson, 22 Tex. Civ. App. 522, 55 S. W. 595.

231 S.W.—52

[5, 6] Numerous letters were introduced in evidence by the defendant in error over the specific objections of plaintiff in error, and after they were introduced the court refused to qualify the effect of certain ones of them by instructing the jury that they were admitted only as proof that the company had notice of Patterson's claim. These letters were not admissible as evidence without qualification. They were letters written by Patterson and in his behalf and abounded in argumentative statements. But we are not prepared to admit that the error was harmful, although the evidence was inadmissible, and immaterial. They related to the letter contract Patterson rested his rights in this suit upon and to other matters and transactions, wholly irrelevant, which preceded that contract. The evidence in behalf of plaintiff in error upon the issue of whether or not the letter contract claimed by Patterson was made was so weak, inconclusive, and negative in character that it can scarcely be denominated as more than proof of a suspicion of a fraudulent claim, or as tending to make an issue of fact as to whether the letter was written in accordance with Patterson's contention. Patterson was supported in his positive testimony with reference to the letter by at least two disinterested and unimpeached witnesses. Plaintiff in error during a period of 17 years after the date on which it contends its liability for renewals was fixed so as to exclude those granted by the letter continued regularly to pay them or allow Patterson to retain them, which was in effect the same, under no claim of right except that given by the letter. All the foregoing is met by evidence on the part of the company's officials, who had succeeded those with whom Patterson dealt, only to the effect that their files and records contained no copy of any contract or letter embracing the stipulations Patterson and his witnesses swore were in the letter, and with statements made by them that they did not believe, and had no reason to believe, that any such contract ever existed. The material evidence taken altogether is practically conclusive of the affirmative of the only issue presented to the jury. We do not think we could permit a finding contrary to that made by the jury to stand. Holding this view of the proof upon the only fact determined by the jury, we believe that the rules by which we are to be guided in such situations clearly require us to overrule the assignments presenting this error. We cannot say the error probably caused the rendition of an improper judgment, or that the result could have been different if such error had not been committed. 62a Rules Texas Courts of Civil Appeals (149 S. W. x); Howell v. West, 227 S. W. 253.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes